**John William McCRORY, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 11–92–167–CR.**

Court of Appeals of Texas,
Eastland.

May 13, 1993.

Tom Whitlock, Denton, for appellant.

Bruce Isaacks, Denton County Dist. Atty., Denton, for appellee.

Opinion

DICKENSON, Justice.

The jury convicted John William McCrory of incest [1] and assessed his punishment at confinement for life.[2] We affirm the conviction.

*Background Facts*

The indictment alleged, and the jury found, that on or about April 13, 1989, in Denton County,[3] appellant intentionally and knowingly engaged in sexual intercourse

---

1. TEX.PENAL CODE ANN. § 25.02 (Vernon 1989) defines the offense and declares it to be a felony of the third degree.

2. Punishment was enhanced by TEX.PENAL CODE ANN. § 12.42(d) (Vernon Supp.1993) when appellant entered pleas of "true" to the allegations of two prior felony offenses (burgla-

ry in 1973 and murder in 1983). The enhanced punishment required that he be sentenced to confinement for life or for any term of not less than 25 nor more than 99 years.

3. There was a change of venue from Denton County to Taylor County.

with A.M., a person appellant knew to be his daughter.

Appellant's daughter testified that she was born on May 26, 1973; consequently, she was less than 16 years of age at the time of the offense. She was living with her grandmother, her stepgrandfather, and her grandmother's mother when appellant came to live with them.

A.M. said that her father's name is John William McCrory; she identified him for the jury; and she testified that she was "scared of my dad." One of her school friends convinced her to talk to the school counselor about the incident, and the counselor called Children's Protective Services. One of the caseworkers talked to her, and then she was interviewed by a deputy sheriff and given a sexual assault examination by a medical doctor.

A.M. testified on direct-examination before the jury that, on the day prior to the day she reported the incident to her school counselor, her father came home from work about 8:00 or 9:00 p.m. (while her grandmother was out of the house playing bingo) and that the two of them were alone in her bedroom. The prosecutor's questions and her answers read in pertinent part as shown:

Q: Okay. Did you take your clothes off when he asked you to?

A: Yes.

Q: What happened after that?

A: He took his clothes off.

\*     \*     \*     \*     \*     \*

Q: What happened after he took his clothes off?

A: He—he—he started touching me and stuff.

Q: Did he touch you all over? Did he touch your breasts? Did he touch your vaginal area, or did he touch your leg or your arms? Where did he touch you?

A: My vaginal area.

Q: Okay. Is that with his hands?

A: Yes.

Q: Okay. After he touched you with his hand, what happened after that?

A: Then he wanted me to suck on him.

Q: Okay. And did you do what he asked you to do?

A: Yes.

Q: And when you say "suck on him," what does that mean?

A: His penis.

Q: Okay. Did he place his penis in your mouth?

A: Yes.

Q: Okay. What else—what did he have you do after that?

A: He just made me lay down.

\*     \*     \*     \*     \*     \* .

Q: Okay. After he did that, what did he do?

A: He started having sex.

Q: When you mean—when you say "he started having sex," what do you mean, specifically?

A: He put his penis in my vagina.

There is no independent corroboration of this testimony, but the school friend and the school counselor both testified that A.M. reported the incident to them, that she was "upset," and that she "was crying." The doctor testified that the sexual assault examination was consistent with what A.M. told him but that it was not conclusive. Appellant did not testify.

### Points of Error

Appellant presents three points of error. First, he argues that the evidence is insufficient to sustain a conviction because there is no corroboration of the accomplice' testimony. Next, he argues that the trial court erred in denying his second motion for directed verdict because: "[T]here was no evidence that the defendant engaged in sexual intercourse with a person he knew to be his descendant." Finally, he argues that the trial court erred in refusing his requested instruction in the charge to the jury.[4]

4. Appellant made a timely request that the trial court instruct the jury:

You are instructed that a person who voluntarily enters into sexual intercourse is an accomplice.

### Accomplice or Victim

■ If appellant's daughter was a willing participant, she would be an accomplice; in that event, her testimony would be insufficient unless independently corroborated under the Court of Criminal Appeals holding in *Brown v. State,* 657 S.W.2d 117, 118 (Tex.Cr.App.1983):

> The general rule is that a female who consents to or voluntarily enters into an incestuous intercourse is an accomplice witness. *Bolin v. State,* 505 S.W.2d 912 (Tex.Cr.App.1974). Conversely, if the incestuous intercourse is compelled by force, threats, fraud or undue influence, the victim is not an accomplice witness. *Bolin v. State, supra.* If the victim is found to be an accomplice witness, then there must be other evidence tending to connect the accused with the offense. [TEX.CODE CRIM.PRO.ANN. art. 38.14 (Vernon 1979)]. If there is no such corroboration, the evidence will be deemed insufficient to support the conviction.

Viewing the evidence in the light most favorable to the State, the evidence shows that [the daughter] was compelled to participate in incestuous intercourse with appellant through the use of force, threats and undue influence. Thus, [the daughter] is not an accomplice, her testimony need not be otherwise corroborated, and the evidence connecting appellant with the acts of intercourse is sufficient.

When we view the evidence "in the light most favorable to the State," we find that there is circumstantial evidence that appellant's 15–year–old daughter was not a willing participant but that she was a victim whose testimony does not require corroboration. The evidence shows that appellant was afraid of her father and that, on the morning after the single incident, A.M. told a friend at school who convinced her to talk to the school counselor. The friend and the counselor both testified that A.M. was "upset" that morning and that she "was crying" when she told each of them what had happened. See also and compare *Duby v. State,* 735 S.W.2d 555 (Tex.App.—Texarkana 1987, pet'n ref'd). The first point of error is overruled.

### Knowledge of Kinship

■ Appellant argues in his second point of error that there is no evidence that he knew that A.M. was his descendant. We disagree. Not only did the girl identify him as her father, appellant introduced into evidence two letters which she had written to him prior to the date of the offense. One letter was addressed to him as "Daddy," and the other letter was addressed to him as "Dad." The second point of error is overruled.

### Requested Instruction

■ Appellant argues in his third point of error that the trial court should have given the jury his requested charge on accomplice testimony. See Footnote 4, supra. Appellant states in his brief that:

> It is the Appellant's position that the witness is an accomplice as a matter of law and that *there is no conflict in evidence,* however should conflict exist, then such is a jury issue which should have been submitted for determination. (Emphasis added)

We agree that "there is no conflict in [the] evidence." When viewed in the light most favorable to the trial court's ruling and the jury's verdict, the evidence shows that appellant's daughter was not a willing participant or accomplice but that she was a victim of the incestuous occurrence. The third point of error is overruled.

The judgment of the trial court is affirmed.

---

You are further instructed that a conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the accused with the offense committed, and the corroboration is not sufficient [if] it merely shows the commission of the offense or the mere presence of the accused.