## ARTHUR MASTEN V. THE STATE.

No. 11295.   Delivered January 25, 1928.

Rehearing denied State May 23, 1928.

**1.—Incest—Prosecutrix an Accomplice—Must Be Corroborated.**

Where, on a trial for incest, the prosecutrix being an accomplice, it was necessary for the state to produce other testimony than that of the accom-

plice, which of itself tended to connect appellant with the commission of the offense. This the state in the instant case wholly failed to do, and it becomes our duty to direct a reversal of the case. See Jones v. State, 263 S. W. 288.

### ON REHEARING BY STATE.

#### 2.—Same—No Error Perceived.

On rehearing by the state, a most careful examination of the record fails to convince us that our original disposition of the case was not correct. Corroboration of the exculpatory testimony of the prosecutrix was absolutely necessary. The fact that appellant was shown to have had the opportunity to indulge in sexual intercourse with prosecutrix, unaccompanied by any fact or circumstance tending to establish that he took advantage of an opportunity that was also shown to have been available to other men, is not what we understand the statute contemplates, nor the decisions lay down as the law, and the state's motion for rehearing must be overruled.

Appeal from the District Court of Cooke County. Tried below before the Hon. Alvin C. Owsley, Judge.

Appeal from a conviction for incest, penalty three years in the penitentiary.

The opinion states the case.

*Garnett & Garnett* and *Culp, Culp & Culp* of Gainesville, for appellant. On Corroboration of Prosecutrix in Case of Incest, appellant cites: Welden v. State, 10 Tex. Crim. App. 401; Roach v. State, 8 Tex. Crim. App. 491; Coleman v. State, 44 Texas (Sup. Ct.) 111; Dill v. State, Tex. Crim. App. 278; Davis v. State, 2 Tex. Crim. App. 588; Hoyle v. State, 4 Tex. Crim. App. 239; Jones v. State, 4 Tex. Crim. App. 529; Jones v. State, 7 Tex. Crim. App. 457; Myers v. State, 7 Tex. Crim. App. 641; Weber v. State, 256 S. W. 597; Wooley v. State, 96 S. W. 28; Masten v. State, 271 S. W. 920.

*Sam D. Stinson, J. L. Gettys, J. T. Adams, Sullivan, Speer & Minor,* and *A. A. Dawson* of Canton, State's Attorney, for the State.

CHRISTIAN, JUDGE.—The offense is incest, the punishment confinement in the penitentiary for three years.

Appellant calls in question the sufficiency of the evidence, asserting that the testimony of Laura Belle Henard, who was an accomplice, is not sufficiently corroborated.

The testimony of prosecutrix was, in substance, as follows: Prosecutrix, Laura Belle Henard, was appellant's niece. In the spring of 1922 she lived at Era, in Cooke County. She had gone

to school during the winter and until the latter part of April, when school closed.  School closed on Friday· and on the following Wednesday or Thursday appellant came to Era in a wagon and went to the home of Lewis Masten, where prosecutrix was staying.  When he saw prosecutrix he requested her to go home with him and she advised him that she had to get the consent of her father, J. H. Henard.  She went to her father and procured his consent to visit · in appellant's home.  Returning to Lewis Masten's home she got in the wagon with appellant and drove to the home of her father for the purpose of procuring some clothing to take with her on the visit.  She then drove in the wagon with appellant through the town of Era and on to appellant's home.  When she reached appellant's home there was nobody in the house, appellant's wife being away at the time.  On arriving at appellant's home, prosecutrix and appellant went in the house.  After entering the house, appellant had sexual intercourse with prosecutrix.  Prosecutrix remained at appellant's home until the following Sunday evening, at which time she returned to her home with her brother, Glenn Henard. During the time she was at the home of appellant she went with appellant's wife to a neighbor's where the ladies of the neighborhood were practicing a play.  A short time before visiting appellant's home, prosecutrix went on a fishing party with a man and several boys and girls.  She had frequently visited appellant's home.  Prior to the time the incestious relation with appellant was had, prosecutrix had never indulged in sexual relations, and subsequent to said time did not have sexual intercourse with any man.  She had never had a date with a man, and although she had gone to a few parties, she had been with other girls and had never been alone with any boy.  Prosecutrix gave birth to a baby on the 26th of January, 1923, which was approximately nine months after her visit in appellant's home. She testified that appellant was the father of her baby.

The state sought to corroborate prosecutrix by showing the following: The mother of prosecutrix testified that her daughter gave birth to a baby on the 26th of January, 1923; that prior to the summer of 1922 she had never known prosecutrix to have a date with a young man and had never known of her being alone in the company of any man other than her father, her brother, or appellant; that prosecutrix had never left the house in company with any man other than her father, her brother, or appellant.  The father of prosecutrix corroborated the fact of her leaving with appellant in a wagon for his, appellant's home, and testified that he, the father, had never had sexual

intercourse with prosecutrix.  A younger sister of prosecutrix had never known of prosecutrix going anywhere with a young man.  Glenn Henard, the brother of prosecutrix, went to the home of appellant on Sunday afternoon and carried prosecutrix to her own home.  This witness had never known of prosecutrix having a date with any man or boy and had never himself had illicit relations with her.  On the occasion of the picnic referred to in the testimony of prosecutrix, she was not alone with any man, and each male member of the party testified that he had never had illicit relations with prosecutrix.  The fact of the visit of prosecutrix to the home of a neighbor of appellant during the time that the practice of a play was in progress was corroborated by one of appellant's witnesses.  The physician who attended prosecutrix during the confiement showed the period of gestation from conception to birth is usually about 280 days; that sometimes the period is 270 days, and occasionally runs to 290 days.

Considering the sufficiency of the corroborative testimony, aside from that of the accomplice witness, can it be said that such testimony tends to connect appellant with the offense charged?  We think not.  While it is shown that prosecutrix was at appellant's home approximately nine months previous to the date she gave birth to a baby, we find nothing in the record corroborative of her statement to the effect that she and appellant were alone in appellant's home on the occasion she testifies that he had sexual intercourse with her.  The fact that prosecutrix gave birth to a child approximately nine months after her visit to the home of appellant is a circumstance show that she had sexual intercourse with some man at about the time she was in appellant's home.  But, if appellant and prosecutrix were alone in his home, the fact that the period of gestation from conception to birth varies from 270 to 290 days would be destructive of the conclusion that the fact of appellant's access to prosecutrix tended to connect him with the offense charged.  There was a period of time during which prosecutrix was not in the company of appellant when sexual intercourse and conception would, taking into account the period of gestation, have resulted in the birth of the baby on the date shown by the testimony.  In our opinion, the corroborative testimony does not exclude the fact of access to prosecutrix during such period of time.

Prosecutrix was an accomplice, and the court instructed the jury to that effect.  It was, therefore, necessary for the state to offer testimony other than that of the accomplice, which of

itself tended to connect appellant with the commission of the offense.   Jones v. State, 263 S. W. 288.   This the state failed to do, and it becomes our duty to direct a reversal of the case
   The judgment is reversed and the cause remanded.

                                *Reversed and remanded.*

   The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING BY STATE.

   LATTIMORE, JUDGE.—The state most earnestly urges that we erred in our reversal of this case.   Prosecutrix gave birth to a child January 26, 1923, whose paternity she ascribes to an incestuous act of intercourse had by her with appellant either the last of April or first of May, 1922, which act she insists was the first, last and only act of intercourse ever had by her with any person.   The doctor who attended her at the birth of her child was a witness for the state, and testified that the period of gestation was normally 280 days, with a variation of ten days each way.   Mathematical computation of 280 days back from January 26, 1923, would bring us to April 21, 1922.   Conceding this to be a normal case as to the period of gestation, the act producing pregnancy would have occurred with a twenty-day period covering from April 11 to May 1, 1922.   The most that can be said from the testimony in this case, aside from that of the unfortunate girl, was that she was at appellant's house two or three days during this period and near its close.   There is some doubt cast upon the question whether she was there during said twenty-day period or not.   Two ladies testified for the defense that during the time she was at appellant's home, she attended a meeting of some kind of a club with appellant's wife, and the date of such attendance is fixed by these two ladies as Thursday, the 4th of May, 1922, one of the women in question having kept the minutes of the meeting and made a note of the date.   However, we do not regard this as a serious extension of said twenty-day period, though it might be looked to as a circumstance.   That prosecutrix was alone with appellant while at his house on the occasion referred to, appears from no other source than her own testimony.   Where was she and with whom during such time, is otherwise left to conjecture. Looking further to ascertain if possible where she was and with whom she was during the remainder of said twenty-day

period, we observe that she lived near the town of Era, which she says has a good many people in it, and that she attended school at said town, which school closed on Friday before the Wednesday or Thursday of this alleged act, or in other words, said school closed about April 24 or April 25. We thus have her in school about or quite two weeks of this twenty-day period, and naturally associated with the boys and men incident to school life, and the going to and from school. Where was she from the closing of school during the period of approximately a week before she went out to appellant's house? That she was in Era, at the home of another uncle, viz.: Lewis Masten, at the time appellant came for her to take her to his house on the occasion of the alleged act, is affirmed by her in her testimony. Neither Lewis Masten nor his wife, nor any member of that family testified on this trial. How long was she at Lewis Masten's on this visit? Who did she see or have opportunity to see on said visit? In other words, the state seems to place reliance on a process of exclusion in an effort to show that appellant had access to her, and that this must be considered as a corroborative circumstance pointing to him as the guilty party. Such process would be entirely proper, and, if it could be carried far enough, might furnish corroboration. One excluded by proof from access to but a particular man for a sufficient length of time, at the beginning of a period of gestation, might by this proof be supported in a claim that such man had cohabited with her and was the father of her child; but when it appears that during such period her position was such as that she might have been approached by anyone of a number of men, something more than mere opportunity must be proved. Indisputably, in the investigation of a question like this, the woman's attitude of favoritism toward one man or a more frequent association by her with one than with others, might be looked to, but nothing of that kind appears in this record. There is not the slightest testimony here of any former fondling or undue familiarity or attempts to acquire improper influence with prosecutrix on the part of appellant than there is with Lewis Masten or any of the other men with whom she had an acqquaintance. Nor is there any attempt to show that as a result of his successful effort on the occasion in question appellant ever again tried to accomplish such evil purpose, or ever suggested to prosecutrix or did anything seen by anyone to indicate that he desired to follow up his successful effort.

We also observe that the girl testified that she went out to a picnic on Blocker Creek after school closed in the spring of 1922, and she named the young men and women in the group who were with her. The state introduced most, if not all, of these and they swore that neither prosecutrix nor any of them were guilty of misconduct on this occasion. Prosecutrix also swore that she attended a party at Mr. Scott's after school closed and before the picnic referred to. She says a good many people were at this party, but no one testified as to her conduct at the party, or how many men were there, or how late it broke up. It is true the state introduced the father, mother, brother and one sister of the prosecutrix, and also five who were at the picnic on Blocker Creek, and these all deny knowledge of any wrong-doing on her part, and testify that she had had no young men company, had no dates with men, and seemingly went as far as truth would allow them in their effort to narrow the opportunities of other men to have intercourse with prosecutrix and thus to corroborate, if possible, the conclusion of guilt on the part of appellant. We have most earnestly searched this record for some fact aside from the testimony of this unfortunate girl which would individuate this accused and point to him as guilty of this crime, but have not been able to find any circumstance which would point to him more strongly than to any other. If mere presence in the house of one uncle could be relied upon as a circumstance for corroboration, how could this court say that such presence in the house of another uncle would not have the same effect. We have not discussed the proposition as to whether one act, accompanied by no bloodshed, no discoloration even on undergarments, no outcry, no report of assault, no complaint, could be considered as rebutting the guilt of this accused, for these would be questions for the jury, but certainly the state must be able to point to some circumstance either prior or subsequent, at or about the time of the alleged occurrence, indicative of the guilt of the accused, or of a course of conduct on his part leading up to such act, in order to furnish some kind or character of corroboration, but the record before us is bare of such circumstance. The truth seems to be that aside from the testimony of the girl, the facts go no further than to show opportunity arising solely from her presence in appellant's home. To hold this corroboration, as above remarked, would point with equal force to every man whom she was with at any time during the twenty-day period referred to by the doctor, and to so hold would be a dangerous proposition, and would empower any woman to lay her shame at the

door of any man with whom she could prove by others she had been on some occasion about the time of the beginning of a period of gestation. This is not what we understand the statute contemplates nor the decisions lay down as the law.

The motion for rehearing will be overruled.

*Overruled.*