### OLLIE TREJO v. THE STATE.

No. 19878.    Delivered June 1, 1938.

The opinion states the case.

*Arthur Holland,* of Belton, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is incest; the punishment, confinement in the penitentiary for seven years.

The State relied alone upon the testimony of Katherine Trejo, appellant's daughter. If she was an accomplice witness the evidence is insufficient to support the conviction, as she was not corroborated to the extent required by law. According to her testimony, appellant had sexual intercourse with her about five times "in the cotton-picking time" during the year 1937. She said: "My father drew a knife on me and forced me to do that with him. I was afraid of him. He accomplished his purpose to have intercourse with me at that time." Further she testified: "That happened outside down in the corn field." Again, she testified that appellant told her he would kill her if she reported the matter to her folks. It is observed that the witness did not testify that on each occasion of intercourse appellant drew a knife on her. It does not appear that she at any time made complaint to her mother or any other member of the family. As far as her testimony is concerned, she might have consented to four of the incestuous acts of the appellant.

We are unable to reach the conclusion that the witness was not an accomplice. We quote from Mercer v. State, 17 Texas Crim. Rep. 452, as follows:

"By far the most embarrassing question to us, which is presented in this case for our determination, is the sufficiency of the evidence to sustain the conviction. If the prosecuting witness was not an accomplice, then the evidence is unquestionably sufficient. If, on the other hand, she *was* an accomplice, her testimony, if not corroborated to the extent required by law, is insufficient. The first inquiry, therefore, is, does the evidence warrant the conclusion that she was *not* an accomplice? She, herself, testifies very positively that she did not consent to the incestuous acts of her father; that she submitted to them through fear of him, under the influence of threats, etc. But these general statements of want of consent, force, threats, etc., must be considered in connection with her other testimony, and

with all the other evidence in the case. According to her own testimony, her father, the defendant, first forced her to submit to his unnatural desire when she was thirteen years old, and he continued to have sexual intercourse with her from that time until she was twenty years old, about once each week when he was at home, and that the last time he had such intercourse with her he impregnated her with child. During all this time she lived at home with her father, mother, sisters and brother. She was a stout, healthy girl, and at the time of testifying was a married woman and a mother. She never at any time made complaint to her mother, sisters, or to any one else of the defendant's unnatural treatment of her. It was not until she was about four and a half months advanced in pregnancy that she revealed the guilt of her father, and imputed to him the paternity of the child. She continued to reside at her father's, and even resided there with her husband after she married, and continued to reside there up to the time of the trial of this case. The last sexual intercourse which her father had with her was June 30, 1881. Her child was born March 30, 1882. She married July 26, 1883. No prosecution upon the charge was begun until March, 1884. The last sexual intercourse on June 30, 1881, she says, occurred about dark at the cow pen, where she had gone to milk the cows. The cow pen was about fifty yards from and in sight of the house, where her mother, sister and brother were at the time. She made no outcry and no resistance. To our minds her testimony, taken altogether, and in connection with the other evidence in the case, is inconsistent with the conclusion that she was not an accomplice in the commission of the offense. That this long continued incestuous intercourse, repeated almost weekly for a period of seven years, almost in the very presence of the other members of the family, could have occurred without the consent of the witness, is to our minds unnatural, unreasonable and incredible. We can not believe it, and we do not think the jury could have grounded their verdict upon that belief."

Testifying in his own behalf, appellant denied that he had sexual relations with his daughter.

The judgment is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.