1398-15    1399-15    1400-15 1401-15

No. 02-15-00065-CR

No. 02-15-00066-CR

No. 02-15-00067-CR

No. 02-15-00068-CR

ORIGINAL

Trial Court Nos. 08792, 08793, 08796, 08794

RECEIVED IN
COURT OF CRIMINAL APPEALS

OCT 29 2015

Abel Acosta, Clerk

IN THE COURT OF CRIMINAL APPEALS

AT AUSTIN, TEXAS

PABLO GONZALES JR., APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

FILED IN
COURT OF CRIMINAL APPEALS

OCT 29 2015

Abel Acosta, Clerk

## PETITION FOR DISCRETIONARY REVIEW

Mr. Pablo Gonzales, Jr.

Appellant, Pro Se

TDCJ-ID # 01981108

C.T. Terrell Unit, A3-46

1300 FM 655

Rosharon, Texas 77583

TABLE OF CONTENTS                                                      PAGE

TABLE OF CONTENTS                                                      I

INDEX OF AUTHORITIES                                                   II

STATEMENT REGARDING ORAL ARGUMENT                                      III

STATEMENT OF CASE                                                      IV

STATEMENT OF PROCEDURAL HISTORY                                        V

QUESTIONS PRESENTED FOR REVIEW                                         VI

QUESTIONS ONE. TWO AND THREE ARGUMENTS                                 1-5

QUESTION FOUR ARGUMENTS                                                6-11

PRAYER FOR RELIEF                                                      11

SERVICE ON STATE PROSECUTING ATTORNEY                                  12

APPENDIX                                                               13

i

INDEX OF AUTHORITIES                                                    PAGE

Alexander v. State, 126 Tex. Crim. 625, 72 S.W. 2d 1080                 1, 4

Arcila v State, 834 S.W. 2d 357 (Tex. Crim. App. 1992)                 9, 10

Cropper v. Caterpillar Tractor Co., 754 S.W. 2d 646 (Tex. 1988)        11

Marchbanks v. State, 68 S.W. 2d 1038                                    1, 5

Masten v. State, 109 Tex. Crim. 596, 6 S.W. 2d 367                      1, 5

Mercer v. State, 17 Tex  App. 452                                       1, 5

Montgomery v. State. 810 S.W. 2d 372 (Tex. Crim. App. 1991)            6. 8. 11

Morgan v. State, 692 S.W. 2d 887 (Tex. Crim. App. 1985)                6, 7

Moss v. State, 141 Tex. Crim. 193, 147 S.W. 2d 1085                     1, 5

Pavlacka v. State, 892 S.W. 2d 897 (Tex. Crim. App. 1994)              6, 7

Pool v. Ford Motor Co., 715 S.W. 2d 629 (Tex. 1986)                    11

Prior v. State, 647 S.W. 2d 956 (Tex. Crim. App. 1983)                6, 7

Trejo v. State, 135 Tex. Crim. 39, 117 S.W. 2d 115                     1, 5

Wilson v. State, 184 S.W. 2d 141                                       1, 4

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument will be helpful so that the Honorable Court will be allowed to ask any questions pertaining to the argument and petition, and to make proper objections to any inaccurate statements made by the Appellee.

## STATEMENT OF CASE

On January 28, 2015, in a trial which consolidated four offenses against four different victims, a jury convicted PABLO GONZALES, JR., of aggravated sexual assault of a child and three counts of indecence with a child by contact. See Texas Penal Code §§ 22.021(a)(2)(B) and 21.11(a)(1)(West Supp. 2014), respectively. Following the conviction, the jury assessed punishment at life imprisonment in the Texas Department Of Criminal Justice's Institutional Division on the aggravated sexual assault of a child charge and at twenty years each for the indecence charges. In each case, the jury assessed a $10,000.00 fine. (R.R. 7, pp. 88-90).

## STATEMENT OF PROCEDURAL HISTORY

On or about June 29, 2015, Appellate Counsel, Tim Copeland file BRIEF OF APPELLANT to the Second Court Of Appeals At Fort Worth, Texas.

On or about September 9, 2015, the State Of Texas filed its TEXAS'S RESPONSE BRIEF.

On September 24, 2015 the Second Court Of Appeals At Fort Worth, Texas delivered its OPINION, Affirming the trial court's judgment.

QUESTIONS PRESENTED FOR REVIEW

1. Whether the decision of the Court of Appeals is in conflict with the prior decisions of the Texas Court of Criminal Appeals.

2. Whether or not the Court of Appeals decided an important question of state and federal law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals.

3 Whether or not the prosecutrix is an accomplice as a matter of law due to the delayed outcry and the fact the complaint was made after many years.

4. Whether the Court of Appeals erred in its determination.

5. Whether the extraneous offense testimony is relevant to a "fact of consequence in this case.

QUESTIONS ONE, TWO AND THREE.

ARGUMENT

Appellant's questions One, Two and Three are related. Therefore, for purposes of clarity and brevity they are argued under one argument.

The Court Of Appeals decision conflicts with the decisions of the Texas Court Of Criminal Appeals decisions in Alexander v. State, 126 Tex. Crim. 625, 72 S.W. 2d 1080; Wilson v. State, 184 S.W. 2d 141; Moss v. State, 141 Tex. Crim. 193, 147 S.W. 2d 1085; Mercer v. State, 17 Tex. App. 452; Marchbanks v. State, 68 S.W. 2d 1038; Masten v. State, 109 Tex. Crim. 596, 6 S.W. 2d 367, and on retrial in 20 S.W. 2d 780; Trejo v. State, 135 Tex. Crim. 39, 117 S.W. 2d 115; and the Court Of Appeals decided an important question of state and federal law in a way that conflicts with the applicable decisions of the Court Of Criminal Appeals and full consideration of the Petition For Discretionary Review is necessary to secure and maintain uniformity of the court's decisions, pursuant to Rules Of Appellate Procedure, Rule 66.3 Texas Code Criminal Procedure And Rules.

At the outset it's vital to know that appellant has not yet received copies of the Clerk Records and Reporter Records. Therefore, this Petition is prepared from the Brief Of Appellant as prepared by Appellate Counsel, Tim Copeland; The State Of Texas's Response Brief; and the Court Of Appeals Opinion.

Each of the alleged victims were identified by pseudonyms in the respective indictments and will be referred to by those pseudonyms in this petition for discretionary review: No. 08792-Jane Doe 'A'; No. 08793-Jane Doe 'C'; No. 08792-Jane Doe 'B'; and No. 08796-Jane Doe 'E'.

There was no testimony corroborating the alleged fact that appellant had actually been seen and caught sexually abusing either of the alleged victims.

Jane Doe 'C' testified that in February, 2005, she was 10 years old and that her mother is J.P. (R.R. 4, pp. 181-186). On one occasion in particular, around February 1, 2005, she testified, she was visiting in appellant's home with her counsin (Jane Doe 'A') and a friend, B.H. She said that she was laying in appellant's bed when he rubbed on her vaginal area and then penetrated her vagina with two of his fingers. (R.R. 4, p. 200). 'C' said that she finally told her mother J.P. about the abuse when J.P. asked if appellant had ever touched her. 'C' said that at first she told her "no", but about ten minutes later, she admitted to her mother that he had. (R.R. 4, pp. 202-203).

1.

Jane Doe 'E', another of J.P.'s children, testified that she could only remember one time that appellant touched her inappropriately. That occurred, she testified, when she was in the first or second grade. She said that she was spending the night at appellant's house in June of 2004 when she woke up because she had wet the bed. She said appellant told her it was "okay", but after sitting her in a chair, he began rubbing her vagina through her underwear. (R.R. 4, p. 232). When someone knocked on his bedroom door and he went to answer the knock, she got up and left. (R.R. 4, pp. 231-232). Nearly a year later, in May of 2005, she finally told someone about the incident the year before.

Jane Doe 'A's testimony was similar to the previous victim's testimony. Appellant, she said, touched her a number of times in her vaginal area, both under and over her clothes, and she recounted a particular incident that occurred around the end of December, 2004. (R.R. 4, pp. 317-321). However, she could not specifically recall if the incident occurred around Christmas or not. (R.R. 4, p. 324).

Graham Police Officer Terry Vanlandingham testified that on May 13, 2005, he was contacted by T.P. and J.P., the mothers of Jane Does A and B, and C and E, respectively, and he took statements from both the victims and their respective mothers.

After conducting a 38.072 hearing, the trial court designated T.P. (the mother of Jane Does 'A' and 'B') as the outcry witness for Jane Doe 'A' only.

D.M. testified that she was appellant's ex-wife. (R.R. 5, p. 18). In turn, D.M. testified that she went to see appellant secretly armed with a tape recorder. She said that she confronted appellant about the children's accusations, and his response was, "I'm sick and I need help." (R.R. 5, p. 20) D.M. said that she later destroyed the tape with the incriminating statement. (R.R. 5, pp. 26-27).

T.H. testified that she visited appellant in his home with her father in 2004-2005 when she was six or seven. (R.R. 5. p. 97). She said that her father often 'traded' her to appellant in exchange for drugs. Once a bargain had been struck, she said, appellant would lead her into his bedroom where he rubbed her vagina and made her touch his penis. (R.R. 5, pp. 98-99, 101). She said that she never told anyone because appellant threatened her father and sisters. (R.R. 5, p. 108). However, T.H.'s father, R.H., specifically denied that he had ever 'traded' his daughter T.H. to appellant for illegal narcotics. (R.R. 5, p. 208).

T.B., T.H.'s grandmother, testified that when asked T.H. if appellant had ever touched her, the girl told her that he had not. (R.R. 5, p. 224).

Andra Roy, a licensed professional counselor, who counseled Jane Doe 'A' and Jane Doe 'C' from August, 2006 to November of 2006, testified that neither girl ever mentioned appellant in their counseling sessions.

There was no evidence corroborating Jane Doe 'A's outcry. Neither did the outcry specifically describe any of the circumstances surrounding the alleged abuse to suggest the outcry was reliable such as the location where the abuse occurred or the time frame surrounding the abuse. Moreover, the outcry witness herself admitted to an incomplete and faulty memory at the time of the outcry, probably exacerbated at the time by daily illegal drug use.

The alleged victim never told anyone about the abuse or that her father had traded her for illegal narcotics even though she had reported a similar offense of sexual abuse by an uncle when she was younger and which resulted in the uncle's imprisonment.

T.P. also admitted that during the pertinent time period, including when she reported her daughter's outcry to the police, she was a heavy drug user and that she could not now remember a lot of things about what was said or done. (R.R. 4, p. 259). She admitted that her drug habit was so bad in 2004-2005 that she could have been using illegal narcotics on a daily basis. (R.R. 4, p. 263).

According to T.P., 'A' told her that appellant had touched her privates and that he had stuck his fingers inside her vagina. The outcry, however, offered no other details about the abuse. 'A' did not tell T.P., for example, where or when the abuse had occurred or the circumstances leading up or surrounding the abuse or what happened aftwards. In fact, T.P. offered no corroborating evidence of any kind to indicate the reliability of the outcry statement.

Here. T.H. could not identify appellant's house where she and her father supposedly visited innumberable times and inwhich she claimed to have suffered "multiple" instances of sexual abuse. (R.R. 5, pp. 36-37, 43). In fact, T.H. never told anyone about the abuse until the summer "when she was fourteen" even though she had told on an uncle who she had accused of doing the same thing as appellant when she was younger than seven and before she ever alleged that appellant had done anything. (R.R. 5, p. 46).

**MOST IMPORTANT IS,** the alleged abuse by appellant was **unreported by the prosecutrix for seven years,** and not corroborated by other witnesses and the father vehemently denied the accusations.

The Court Of Appeals decided concerning the prosecutrix outcry statement: But even if we were to conclude that the trial court abused its discretion in admitting the testimony, such error would not rise to the level of constitutional error. See Patterson v. State, Nos. 02-10-00350-CR, 02-10-00351-CR, 2012 WL 171115, at *7 (Tex. App. - Fort Worth Jan. 19, 2012, no pet.)(mem.op.. not designated for publication). Rather, it would be evaluated under Rule Of Appellate Procedure 44.2(b), and reversal

would be required only if the error affected appellant's substantial rights. In examining the record, we note that Jane Doe A testified at trial, and her testimony both corroborated T.P.'s testimony regarding the outcry and provided greater detail. Even if we had held that the trial court abused its discretion by admitting the outcry statement, we would hold such error harmless. We overrule appellant's first issue.

**Appellant avers** the prosecutrix, J.P., Jane Does 'A' and 'C' mother, the outcry witness was an accomplice as a matter of law due to the seven year delay in complaining about appellant's alleged actions. In fact, not only did appellant not commit the alleged acts, the prosecutrix testimony was insufficient to prove that the alleged acts complained of actually took place. Therefore, as an accomplice her testimony required corroboration.

Complainant Jane Doe 'A' testified the alleged offense occurred when she was 10 years old. She was almost 22 years old at the time of her testimony at trial.

Complainant Jane Doe 'B' testified the alleged offense occurred when she was in Pre-Kindergarten in 2004. She was 15 years old at the time of her testimony at trial.

Complainant Jane Doe 'C' testified the alleged offense occurred when she was 10 years old. She was 20 years old at the time of her testimony at trial.

Complainant Jane Doe 'E' testified the alleged offense occurred when she was in the first or second grade. She was 18 years old at the time of her testimony at trial.

As the record reveals, the alleged victims were 22 years old; 15 years old; 20 years old; and 18 years old at the time of trial, and was 10 years old; in Pre-Kindergarten; 10 years old; and in the first or second grade on the date of the alleged offense which was submitted to the jury. Said alleged acts continued without any protest or report from the prosecutrix, J.P., the alleged victims mother and outcry witness.

The record verifies that appellant had the opportunities to be with the alleged victims alone. This was the only evidence adduced in an effort to corroborate the prosecutrix. If the Court of Criminal Appeals finds prosecutrix to be an accomplice, then this will not constitute sufficient evidence to corroborate her.

Judge Hawkin's reasoning in his concurring opinion in Alexander v. State, 126 Tex. Crim. 625, 72 S.W. 2d 1080, is to the writer most compelling. He said that where repeated acts are shown, coupled with a delayed outcry. a prosecutrix of the same age as the one at bar would in his judgment be an accomplice as a matter of law.

In Wilson v. State, 184 S.W. 2d 141, where the evidence showed that the prosecutrix had engaged in acts of intercourse with the accused over a period of five years without ever reporting the same to anyone and where the State contended that she had submitted through fear, this Court held that the threats were not sufficient to excuse the pro-

secutrix from making an outcry at the time of the commission of the offense relied upon by the State for conviction and were not sufficient to explain her failure to report the prior acts. Wilson is further authority for the rule that evidence which only shows that an accused had an opportunity to have an act of intercourse with the prosecutrix does not tend to establish the fact that intercourse actually took place and is insufficient to corroborate prosecutrix testimony that it actually occurred.

In Moss v. State. 141 Tex. Crim. 193, 147 S.W. 2d 1085, where only one act of intercourse was shown, this Court had occasion to discuss prosecutrix testimony about appellant having whipped her and having lectured her about keeping company with a certain young man with whom she was infatuated and held that since prosecutrix waited almost a year to report the matter, she was an accomplice as a matter of law.

In Mercer v. State, 17 Tex. App. 452, this Court held that even though prosecutrix testified that she submitted to the acts of intercourse because of her fear of appellant, her failure to report the continued acts of intercourse, which began when she was 13 until she became pregnant some seven years later, made her an accomplice as a matter of law.

In Marchbanks v. State, 68 S.W. 2d 1038, a case in which the first act of intercourse took place when prosecutrix was 14 years old and she testified that she had always done what her father told her to do and did not actively resist his advances and made no outcry which might have been heard by her mother in the house nearby and failed to report the many acts which followed over a long period of time until many years later, this Court held that she was an accomplice as a matter of law.

Masten v. State. 109 Tex. Crim. 596. 6 S.W. 2d 367, and on retrial in 20 S.W. 2d 780, and Trejo v. State, 135 Tex. Crim. 39, 117 S.W. 2d 115. also supports appellant's contention.

Based upon the authorities cited, it becomes the Court's duty to reverse the conviction.

QUESTION FOUR.

ARGUMENT

The Court Of Appeals decision conflicts with the decisions of the Texas Court Of Criminal Appeals decisions in Morgan v. State, 692 S.W. 2d 877, 880 (Tex. Crim. App. 1985); Pavlacka v. State, 892 S.W. 2d 897 (Tex. Crim. App. 1994); Prior v. State, 647 S.W. 2d 956, 959 (Tex. Crim. App. 1983) and; Montgomery v. State, 810 S.W. 2d 372, 388 (Tex. Crim. App. 1991). Also, the Court of Appeals decided an important question of state and federal law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals and full consideration of the Petition For Discretionary Review is necessary to secure and maintain uniformity of the court's decisions, pursuant to Rules of Appellate Procedure, Rule 66.3 Texas Code Criminal Procedure And Rules.

Appellant argued that the trial court abused its discretion by admitting evidence of the extraneous offenses described by T.H. because the probative value of that evidence was substantially outweighed by the danger of unfair prejudice under Rule 403 of the Texas Rules of Evidence.

The Court of Appeals stated: T.H.'s testimony, although wobbly in areas, corroborated the circumstances, location, and actions of appellant that the other witnesses testified to. Her testimony was probative but did not have the potential to impress the jury in some irrational, yet indelible, way. We hold that the conscientious visiting trial judge did not abuse his discretion by admitting T.H.'s testimony under the law as it now stands.

Appellant challenges the Court of Appeals review of the admissibility of the extraneous offense evidence. Specifically, he contends that the Court of Appeals erred in holding that the trial court did not abuse its discretion by deciding that the evidence was adequate to support a jury finding that beyond a reasonable doubt, appellant had committed those offenses against T.H.

Appellant avers that the appellate analysis was deficient because instead of focusing on how the evidence was relevant to show a fact of consequence in this case, the Court of Appeals attempted to show that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt.

As it stands, the Court of Appeals did not conduct a complete relevacy analysis and the case should be remanded.

True indeed, the Court of Appeals may have properly examined the facts to determine whether the extraneous acts were admissible evidence, but this does not constitute an analysis of what "fact of consequence" the evidence was to go to prove.

6.

"The mere fact that a party introduces evidence for a purpose other than charac-ter conformity, or any of the other enumerated purposes in Rule 404(b), does not, in itself, make that evidence admissible." Therefore, because the evidentiary rules admit only 'relevant' evidence, the purpose for which the proponent wants to admit the extraneous offense must satisfy the definition of relevant evidence set out in Rule 401.

True indeed, extraneous offense evidence will generally always be relevant, but the permissible purpose for which the proponent is offering it may not be. For in-stance, where intent is a material issue and it is not inferable from the act itself, evidence of other acts probative of such intent is relevant and the trial court's decision to admit such evidence is proper. Morgan v. State, 692 S.W. 2d 877, 880 (Tex. Crim. App. 1985). Yet, where the state's direct evidence, however, clearly shows the intent element of the crime and that evidence is uncontradicted by the defendant or not undermined by cross-examination of the state's witnesses, the offer of other crimes is unjustified due to the lack of relevancy. Pavlacka v. State, 892 S.W. 2d 897 (Tex. Crim. App. 1994). Similarly, evidence tending to show that an alle-ged touching was not accidental or by mistake would not be relevant if the defendant has yet to make a claim of accident. Prior v. State, 647 S.W. 2d 956, 959 (Tex. Crim. App. 1983).

It is for this reason that the proponent of 404(b) evidence must persuade the trial court that the extraneous offense is being offered for a purpose other than character conformity, and that this other purpose tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Tex. R. Crim. Evid. 402.

Pursuant to the above Rule, when no statute or rule exist barring the admissibil-ity of relevant evidence, a court may deny its admission because of a constitutional impediment. However, when the admission of relevant evidence stands unobstructed by a constitution, statute or rule, then the judge must allow it in.

Rule 404(b) exemplifies an exception as contemplated by Rule 402. Rule 404(b) exists, in large part, to counter the possibility that evidence may be admitted to show a defendant's corrupt nature from which the jury may then render a verdict not on the facts of the case before them, but, rather, on their perception of the defen-dant's character.

Rule 404(b) reads, in pertinent part: Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

7.

Under this Rule, extraneous evidence introduced solely to show character conformity is inadmissible. But reading Rule 404(b) in light of Rule 401 and 402, if evidence 1) is introduced for a purpose other than character conformity, 2) has relavance to a "fact of consequence" in the case and 3) remains free of any other constitutional or statutory prohibitions, it is admissible.

If the Court views the above sentence as a three part admissibility test, then, as to the first part, this Court has consistently recognized what is apparent from the face of 404(b): the Rule's list of other purposes is neither exclusive nor collectively exhaustive. See Montgomery v State, 810 S.W. 2d 372, 388 (Tex. Crim. App. 1991).

Admissibility of evidence under Rule 404(b), in fact, also hinges on the relevancy of the evidence to a "fact consequence" in the case. Therefore, when a party makes a 404(b) Objection as trial counsel did, they are claiming that evidence is being introduced solely for character conformity or, in other words, that the evidence is irrelevant to anything other than character conformity. They need not explicitly state a Rule 402 objection since one is inherently in their Rule 404(b) objection.

Therefore, consistent with the Court's analysis in Montgomery, 810 S.W. 2d at 387, a Rule 404(b) objection demands a relevanct analysis, because to find otherwise might result in courts admitting evidence that is both highly prejudicial and irrelevant even after a proper 404(b) objection and despite the existence of Rule 401 and Rule 402.

Appellant avers, when the Court say that evidence is relevant, they are necessarily saving, pursuant to Rule 402, that the evidence makes a fact of consequence in the case more or less likely.

As the Court stated in Montgomery, 810 S.W. 2d at 387: a party may introduce evidence where it logically serves to make more probable or less probable an elemental fact: where it serves to make more probable or less probable an evidentiary fact that inferentially leads to an elemental fact; or where it serves to make more probable or less probable defensive evidence that undermines an elemental fact.

Under Montgomery, then it appears that "fact of consequence" includes either an elemental fact or an evidentiary fact from which an elemental fact can be inferred. An evidentiary fact that stands wholly unconnected to an elemental fact, however, is not a "fact of consequence".

Appellant contends, a Court that articulates the relevancy of evidence to an evidentiary fact but does not, in any way, draw the inference to an elemental fact has not completed the necessary relevancy inquiry because it has not shown how the

8.

evidence makes a "fact of consequence" in the case more or less likely.

In the case at bar, it is apparent the Court of Appeals latched onto the phrase common scheme or plan, and held the evidence admissible because it was being introduced for the purpose of showing that plan when the Court Stated: the offending testimony relating to T.H. was adequate to support a finding by the jury that, beyond a reasonable doubt, Gonzales committed an offense against T.H.

Appellant avers, introducing evidence for a purpose other than character conformity does not, somehow, make that evidence magically admissible. Therefore, the question of whether evidence should be admitted after a 404(b) objection necessitates a relevancy inquiry.

Following the Court of Appeals analysis, the relevancy inquiry here would have been: 1) Does this evidence make the existence of a "common scheme or plan" more or less likely? and 2) Can the Court infer an elemental fact from the existence of a plan?

Here, the Court need only to ask if the extraneous offense testimony was relevant to any fact of consequence in the case other than character conformity. The trial court, for example, could have admitted T.H.'s testimony as evidence relevant to show appellant's intent. For example, testimony that appellant allegedly sexual molested two girls before he allegedly molested the complainant makes it more likely that appellant did not act accidentially, but with intent.

Appellant avers that common scheme or plan was only a theory for the prosecution to bridge the gap between the act and the intent so that the State could attempt to show that appellant acted with a culpable mental state. However, the Court of Appeals failed to bridge the gap.

Instead of focusing on how the evidence was relevant to show a fact of consequence in this case, the Court of Appeals attempted to show how the evidence tended to show a common scheme or plan and stated the offending testimony relating to T.H. was adequate to support a finding by the jury that, beyond a reasonable doubt, Gonzales committed an offense against T.H.

The Court of Appeals analysis on this point falls short because the evidence showing extraneous offense is no more indicative of a common scheme or plan than of the possibility that the appellant may have had the opportunity.

·Furthermore, the Court did not attempt to show how the existence of a common scheme or plan related to intent or any other fact of consequence in this case.

Of Course, it is not up to this Court to make findings as to the relevancy of the evidence in the first part. **Appellant contends,** because the Court of Appeals has not conducted a complete relevancy analysis, the case should be **remanded** back to them so that they may make a determination on this issue.

Rule 403 is yet another exception to the general rule of admissibility under 402. Rule 403 states: Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, or needless presentation of cumulative evidence. Tex. R. Crim. Evid. 403.

Appellant contends Rule 403 acts as a further check on the admissibility of the evidence. In other words, even though extraneous evidence meets all the requirements for admissibility under 404(b), the trial court may disallow it as excessively prejudicial. Even though the court is not required to prohibit such evidence, the Court must, however, engage in the balancing test of Rule 403 is a proper Rule 403 objection is made  See Montgomery, 810 S.W. 2d at 388.

The Court of Appeals found T.H. testified to all elements of the extraneous offenses of aggravated sexual assault of a child and indecency with a child by contact, and held that the trial court did not abuse its discretion by deciding that the evidence was adequate to support a jury finding that beyond a reasonable doubt, appellant had committed those offenses against T.H. The Court of Appeals also found T.H.'s testimony was probative, but did not have the potential to impress the jury in some irrational, yet indelible, way and that the conscientious visiting trial judge did not abuse his discretion by admitting T.H.'s testimony under the law as it now stands.

It seems the Court of Appeals here found the 403 objection preserved and they addressed the merits of that issue, finding that the probative value of the extraneous offense testimony outweighed its prejudicial effect.

The appellant then, on appeal to this Court, objects to the Court of Appeals use of the extraneous offense testimony.

Although the Court should not reverse a determination that results from a properly conducted Rule 403 balancing test merely because the Court disagree with the result, it is proper to reverse a lower court's decision when the test they have employed is incorrect or incomplete. Arcila v. State, 834 S.W. 2d 357, 361 (Tex. Crim. App. 1992). In Arcila, this Court determined that it ought not reverse the lower court's Rule 403 determination, noting that the Dallas Court of Appeals opinion evaluates the issues according to settled rules of law, accounts for the evidence relevant to the questions presented, and reaches a conclusion adequately supported by the law and the evidence. Id.

In this case, however, the Court of Appeals conclusively stated, "we have reviewed the evidence, and find that the trial court did not abuse its discretion in admitting the extraneous acts".

However, appellant avers the Court failed to detail the evidence it used in

10.

arriving at its conclusion. In fact, it is difficult to find much Rule 403 analysis at all in the sentences the Court of Appeals dedicated to that question.

Although the Court of Appeals properly recognized that, when conducting a Rule 403 balancing test, the "probativeness" of the evidence is the weightier consideration, the court failed to discuss the factors necessary for a comprehsive Rule 403 analysis.

As this Court has previously stated, and appellant now reiterate, a complete Rule 403 balancing test demands an inquiry as to all the factors set out in Montgomery, 810 S.W. 2d at 389-90, 392-93.

Appellant also avers, the Court must also, consistent with Arcila, fully account for all the eveidence relevant to their Rule 403 analysis.

Appellant concludes, the above holdings comports with that court's holdings in Pool v. Ford Motor Co., 715 S.W. 2d 629, 635 (Tex. 1986), where it required that the Court of Appeals fully articulate both the evidence and reasoning behind their decision to reverse the verdict on insufficiency grounds. That Court found that such explanation creates a basis on which to determine whether the lower court employed the correct standard in coming to their decision. See also Cropper v. Caterpillar Tractor Co., 754 S.W. 2d 646, 652-53 (Tex. 1988).

Likewise, the Court should be compelled to fully explain their Rule 403 determinations, detailing both the evidence and reasoning used to arrive at those decisions, else the Court may be unable to discren whether the correct test was used in reaching any given result.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Pablo Gonzales, Jr., Appellant prays that this Cause be Reversed and Remanded for a new trial in keeping with the Court's findings herein and for such other relief to which he may be justly entitled.

Respectfully submitted,

*Pablo Gonzales, Jr.*
Mr. Pablo Gonzales, Jr.

11.

## SERVICE ON STATE PROSECUTING ATTORNEY

This is to certify that a true and correct copy of the Petition For Discretionary Review has been served and made on the State Prosecuting Attorney at P.O. Box 12405, Austin, Texas 78711.

Executed on this 21st day of October, 2015.

_Pablo Gonzales_
Mr. Pablo Gonzales, Jr.

Appellant, Pro Se

APPENDIX

1. One copy of the Court of Appeals 'OPINION'.



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 02-15-00065-CR**
**NO. 02-15-00066-CR**
**NO. 02-15-00067-CR**
**NO. 02-15-00068-CR**

PABLO GONZALES, JR.                                                APPELLANT

V.

THE STATE OF TEXAS                                                  STATE

----------

FROM THE 90TH DISTRICT COURT OF YOUNG COUNTY
TRIAL COURT NOS. 08792, 08793, 08796, 08794

----------

## OPINION

----------

A jury convicted Appellant Pablo Gonzales, Jr. of one count of aggravated sexual assault of a child and three counts of indecency with a child, charged in four separate indictments. The jury assessed his punishment at life imprisonment in the sexual assault case, twenty years' imprisonment in each of the indecency cases, and a $10,000 fine in each case. The trial court sentenced



him accordingly. Appellant brings four issues on appeal. He does not contest the sufficiency of the evidence supporting his guilt. Instead, he challenges the admission of outcry testimony, evidence that he did not waive extradition, and evidence of extraneous sexual offenses. Because the trial court committed no reversible error, we affirm the trial court's judgments.

**Summary of the Facts**

Because of the confusing nature of this record, we adopt the State's summary of the relationships of the witnesses and the pseudonyms assigned to the complainants in these four cases:

- Amanda . . . , Appellant's niece who lived with him at the time of the abuse[;]

- . . .

- Jane Doe A, Complainant [in] Cause No. 08792, Jane Doe B's sister, and cousin to Jane Does C and E[;]

- Jane Doe B, Complainant [in] Cause No. 08794, Jane Doe A's sister, and cousin to Jane Does C and E[;]

- T.P., Jane Doe A's and B's mother;

- Jane Doe C, Complainant [in] Cause No. 08793, Jane Doe E's sister, and cousin[] to Jane Does A and B[;]

- Jane Doe E, Complainant [in] Cause No. 08796, Jane Doe C's sister, and cousin[] to Jane Does A and B[;]

- J.P., Jane Doe C and E's mother and T.P.'s ex-sister-in-law[; and]

- T.H., complainant in extraneous offense admitted at trial[.]

Appellant lived in a two-bedroom house in which drug use was rampant. People would come and go on a regular basis, often leaving their children for

2

him to watch. Jane Doe children A, B, C, and E made outcries that Appellant had sexually abused them. The grand jury returned four separate indictments against Appellant in 2005, alleging that he had committed aggravated sexual assault against one child (Jane Doe C) and indecency with a child by sexual contact with three other children (Jane Does A, B, and E) when the children stayed in or visited his home in 2004 and 2005. Appellant left Texas after the Jane Doe children made outcries. He was finally arrested in California in 2012. He did not waive extradition to Texas.

Appellant's adult niece Amanda, who lived with Appellant at the time of the alleged abuse, testified that Jane Doe D, who was then ten years old, also lived in the house with Appellant. When Amanda moved in, Jane Doe D was staying with Appellant in his bedroom, which had one bed. Amanda testified that Jane Does A, B, C, and E, T.P., and T.H.'s father would also come to Appellant's house. Amanda testified that she took Jane Doe D with her when she moved out of Appellant's house. Amanda also testified that later, when Jane Doe D learned that Amanda planned to take her to Appellant's house so that he could babysit her for Amanda, Jane Doe D reacted hysterically and refused to go. Jane Doe D was murdered prior to Appellant's trial.

Jane Doe C testified that she had witnessed Appellant abusing Jane Doe A and that Appellant had abused her at the same time as Jane Does A and D on multiple occasions. She described how Appellant had sexually assaulted her by rubbing her vaginal area and penetrating her vagina with two of his fingers. Jane

3

Doe E described how Appellant had abused her by rubbing her genital area through her underwear and testified that she was eight years old when the abuse occurred. Jane Doe A testified that Appellant had touched her in her vaginal area a number of times, both under and over her clothes. Jane Doe B testified that Appellant touched her vaginal area under her clothes.

Midtrial, the trial court conducted an article 38.072 outcry hearing during which the State offered T.P. as an outcry witness for Jane Does A and B. T.P. testified that she was the mother of Jane Does A and B and that she had spent a lot of time at Appellant's house doing drugs with him during the period of the abuse. She remembered Jane Doe A's outcry but was generally fuzzy on other events in the past. T.P. testified that Jane Doe A had told her that Appellant had both touched and penetrated her genitals with his fingers. T.P. immediately took her two daughters to the police department and lodged a criminal report. She also took them to the advocacy center to be interviewed. It was uncontested that Appellant received proper notice of the State's intent to call T.P. as an outcry witness. The trial court found the outcry testimony reliable as to Jane Doe A but not as to Jane Doe B. Again, all four Jane Does named in the indictments testified at trial.

## Admissibility of Outcry

In his first issue, Appellant argues that the trial court abused its discretion in admitting T.P.'s testimony regarding Jane Doe A's outcry because T.P. admitted that her memory of the event was fuzzy as a result of her drug use.

4

Consequently, he argues, the statement did not possess sufficient indicia of reliability at the time of the trial court's ruling. Additionally, he argues, T.P.'s testimony satisfied few, if any, of the nonexclusive factors the trial court considers in determining the reliability of an outcry.

A trial court's decision to admit evidence will not be disturbed on appeal absent a clear abuse of discretion.[1] A trial court has only abused its discretion if its decision falls outside the zone of reasonable disagreement.[2] Article 38.072 of the code of criminal procedure provides a mechanism that requires the trial court to determine on a case-by-case basis if outcry testimony reaches the level of reliability required to be admissible as an exception to the hearsay rule.[3]

> Indicia of reliability that the trial court may consider [under article 38.072] include (1) whether the child victim testifies at trial and admits making the out-of-court statement, (2) whether the child understands the need to tell the truth and has the ability to observe, recollect, and narrate, (3) whether other evidence corroborates the statement, (4) whether the child made the statement spontaneously in his own terminology or whether evidence exists of prior prompting or manipulation by adults, (5) whether the child's statement is clear and unambiguous and rises to the needed level of certainty, (6) whether the statement is consistent with other evidence, (7) whether the statement describes an event that a child of the victim's age could not be expected to fabricate, (8) whether the child behaves abnormally after the contact, (9) whether the child has a

---

[1]*Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990).

[2]*Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).

[3]Tex. Code Crim. Proc. Ann. art. 38.072 (West Supp. 2014); *Norris v. State*, 788 S.W.2d 65, 71 (Tex. App.—Dallas 1990, pet. ref'd).

5

motive to fabricate the statement, (10) whether the child expects punishment because of reporting the conduct, and (11) whether the accused had the opportunity to commit the offense.[4]

Appellant argues that the outcry lacks reliability specifically because of T.P.'s drug use and generally because it was short, undetailed, and uncorroborated. Appellant is correct that the statement was very short. But it was also very clear, specific, and unequivocal—Jane Doe A told T.P. that Appellant had both touched and penetrated her genitals with his fingers. We cannot say that the trial court abused its discretion in allowing T.P. to testify.

But even if we were to conclude that the trial court abused its discretion in admitting the testimony, such error would not rise to the level of constitutional error.[5] Rather, it would be evaluated under rule of appellate procedure 44.2(b),[6] and reversal would be required only if the error affected Appellant's substantial rights.[7] In examining the record, we note that Jane Doe A testified at trial, and her testimony both corroborated T.P.'s testimony regarding the outcry and provided greater detail. Even if we had held that the trial court abused its



---

[4]Norris, 788 S.W.2d at 71; see also Pair v. State, Nos. 02-13-00406-CR, 02-13-00407-CR, 2014 WL 5878116, at *2 (Tex. App.—Fort Worth Nov. 13, 2014, pet. ref'd) (mem. op., not designated for publication).

[5]See Patterson v. State, Nos. 02-10-00350-CR, 02-10-00351-CR, 2012 WL 171115, at *7 (Tex. App.—Fort Worth Jan. 19, 2012, no pet.) (mem. op., not designated for publication).

[6]See id.

[7]See id.; see also Tex. R. App. P. 44.2(b).

discretion by admitting the outcry testimony, we would hold such error harmless.

We overrule Appellant's first issue.

**Extradition Testimony**

In his second issue, Appellant argues that the trial court reversibly erred by admitting the State's evidence that he did not agree to extradition because the testimony violated his rights to due process and due course of law. At trial, Appellant objected only that the evidence was not relevant. Generally, error must be preserved at trial by a timely and specific objection, and any objection at trial that differs from the complaint on appeal preserves nothing for review.[8] Because Appellant's complaint on appeal does not comport with his trial objection, he has not preserved the issue for appellate review. We overrule Appellant's second issue.



**Extraneous Offense Evidence**

In his third issue, Appellant argues that evidence of his alleged extraneous sexual offenses against T.H. was inadequate to support a jury finding beyond a reasonable doubt that he committed the extraneous offenses. Although the general rule is that a person may not be convicted based on a claim of character

---

[8]*Sterling v. State*, 800 S.W.2d 513, 521 (Tex. Crim. App. 1990), *cert. denied*, 501 U.S. 1213 (1991); *see also Judd v. State*, 923 S.W.2d 135, 138 (Tex. App.—Fort Worth 1996, pet. ref'd).

conformity,[9] the legislature has changed the rules when there is an allegation of a sexual offense against a child. Article 38.37 allows the admission of,

> [n]otwithstanding Rules 404 and 405, Texas Rules of Evidence, and subject to Section 2-a, evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2)[, such as the sexual abuse testified to by T.H.] . . . in the trial of an alleged offense described by Subsection (a)(1) or (2) for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.[10]

Section 2-a of the statute requires that before any trial court admits the evidence of an extraneous offense, the trial court must "determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt."[11] The law is well-established that the "testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault of a child."[12]

At the article 38.37 hearing, T.H. testified that in 2005, when she was seven years old, her father traded her to Appellant in exchange for drugs on more than one occasion. She stated that her father would take her to Appellant's house,

---

[9]Tex. R. Evid. 404(b); *Alba v. State*, 905 S.W.2d 581, 585 (Tex. Crim. App. 1995), *cert. denied*, 516 U.S. 1077 (1996).

[10]Tex. Code Crim. Proc. Ann. art. 38.37, § 2(b) (West Supp. 2014).

[11]*Id.* § 2-a.

[12]*IslasMartinez v. State*, 452 S.W.3d 874, 880 (Tex. App.—Dallas 2014, pet. ref'd).

8

that she sometimes spent the night there, that she had been alone with Appellant in his bedroom, and that he touched her vaginal area, penetrated her vaginally, and forced her to touch his genitals. Even though she could not identify Appellant's house with certainty from a photograph, T.H. also testified that she knew Jane Doe A and that she had seen Jane Doe A at Appellant's house. Thus, T.H. testified to all the elements of the extraneous offenses of aggravated sexual assault of a child and indecency with a child by contact. We therefore hold that the trial court did not abuse its discretion by deciding that the evidence was adequate to support a jury finding that beyond a reasonable doubt, Appellant had committed those offenses against T.H.[13] We overrule Appellant's third issue.

In his fourth issue, Appellant argues that the trial court abused its discretion by admitting evidence of the extraneous offenses described by T.H. because the probative value of that evidence was substantially outweighed by the danger of unfair prejudice under rule 403 of the Texas Rules of Evidence.[14] A trial court's rule 403 decision to admit extraneous offense evidence is reviewed for an abuse of discretion.[15] A reviewing court will "reverse the trial court's judgment [based on the

---

[13]See Tex. Code Crim. Proc. Ann. art. 38.37, § 2-a; Boydston v. State, No. 10-14-00310-CR, 2015 WL 4710260, at *2 (Tex. App.—Waco Aug. 6, 2015, no pet. h.) (mem. op.; not designated for publication).

[14]Tex. R. Evid. 403.

[15]Moses v. State, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003); Freeman v. State, 230 S.W.3d 392, 404–05 (Tex. App.—Eastland 2007, pet. ref'd).

9

trial court's rule 403 analysis] rarely . . . because the trial court is in a superior position to gauge the impact of the relevant evidence."[16]

When extraneous offense evidence is offered, the trial court must conduct a rule 403 analysis that includes the following nonexclusive factors: (1) the probative value of the evidence, (2) the potential to impress the jury in some irrational, yet indelible, way, (3) the time needed to develop the evidence, and (4) the proponent's need for the evidence.[17] The State argues that T.H.'s testimony was critical to support the testimony of Jane Does A, B, C, and E because of the lack of corroboration and that Appellant's case depended on challenging their credibility. The State directs us to *Thompson v. State*,[18] an unpublished opinion from our sister court in Corpus Christi in which the court recognized that, in a child sexual abuse case, the proponent's need for the extraneous offense evidence to combat the defendant's challenge to the complainant's credibility is considered in determining admissibility.[19] This

---

[16]*Freeman*, 230 S.W.3d at 404–05 (citation and internal quotation marks omitted).

[17]*Prible v. State*, 175 S.W.3d 724, 733 (Tex. Crim. App.), *cert. denied*, 546 U.S. 962 (2005).

[18]No. 13-13-00558-CR, 2014 WL 4049892 (Tex. App.—Corpus Christi Aug. 14, 2014, no pet.) (mem. op., not designated for publication).

[19]*Id.* at *6.

10

language echoes the *Montgomery* test for admissibility of extraneous acts of misconduct offered in the guilt phase of a trial.[20]

Reviewing the record in its entirety, we note the care with which the trial court considered its evidentiary rulings throughout the entire trial. The testimony of Jane Does A, B, C, and E, as well as the outcry testimony, showed the combination of drug activity and Appellant's abuse of the children in his home. The State's theory of the case was that Appellant supplied drugs to the complainants' parents to gain access to the complainants. Appellant left Texas soon after the complainants made outcries. He was not extradited until several years had passed. Thus, several years also passed between the events and the witnesses' testimony about those events. The complainants were testifying to memories from childhood. At least one other witness was testifying about events that occurred during a period of drug abuse. The defense, naturally, attacked the witnesses' credibility and ability to recollect. T.H.'s testimony, although wobbly in areas, corroborated the circumstances, location, and actions of Appellant that the other witnesses testified to. Her testimony was probative but did not have the potential to impress the jury in some irrational, yet indelible, way. We hold that

---

[20]*See* 810 S.W.2d at 390 ("[H]ow great is the proponent's 'need' for the extraneous transaction? This . . . inquiry breaks down into three subparts: Does the proponent have other available evidence to establish the fact of consequence that the extraneous misconduct is relevant to show? If so, how strong is that other evidence? And is the fact of consequence related to an issue that is in dispute?").

11

the conscientious visiting trial judge did not abuse his discretion by admitting T.H.'s testimony under the law as it now stands. We overrule Appellant's fourth issue.

**Conclusion**

Having overruled Appellant's four issues on appeal, we affirm the trial court's judgments.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, GARDNER, and WALKER, JJ.

PUBLISH

DELIVERED: September 24, 2015

12



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-15-00065-CR

| | | |
|---|---|---|
| Pablo Gonzales, Jr. | § | From the 90th District Court |
| | § | of Young County (08792) |
| v. | § | September 24, 2015 |
| | § | Opinion by Justice Dauphinot |
| The State of Texas | § | (p) |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS

By _/s/ Lee Ann Dauphinot_____
    Justice Lee Ann Dauphinot



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-15-00066-CR

| | | |
|---|---|---|
| Pablo Gonzales, Jr. | § | From the 90th District Court |
| | § | of Young County (08793) |
| v. | § | September 24, 2015 |
| | § | Opinion by Justice Dauphinot |
| The State of Texas | § | (p) |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS

By __/s/ Lee Ann Dauphinot_____
Justice Lee Ann Dauphinot



# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-15-00067-CR

Pablo Gonzales, Jr.

§   From the 90th District Court

§   of Young County (08796)

v.

§   September 24, 2015

§   Opinion by Justice Dauphinot

The State of Texas

§   (p)

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS

By __/s/ Lee Ann Dauphinot_____
    Justice Lee Ann Dauphinot



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-15-00068-CR

Pablo Gonzales, Jr.

§   From the 90th District Court

§   of Young County (08794)

v.

§   September 24, 2015

§   Opinion by Justice Dauphinot

The State of Texas

§   (p)

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS

By _/s/ Lee Ann Dauphinot_____
Justice Lee Ann Dauphinot

Mr. Pablo Gonzales Jr. # 1981108

L.T. Travell Unit, A-5-46

1300 FM 655

Roshron, TX 77583

Court of Cri...

Attn: Abel Ac...

P.O. Box...

Capitol Stat...

Austin, TX