## BETSY WEBSTER v. JOHN CORBETT.

1. Previous to the abolition of slavery a person who desired to emancipate his slaves was required, by the law of this State, to provide for sending them without the territorial limits of this State, but there was no time limited within which they must be removed.

2. Nothwithstanding that during the existence of slavery a devise of freedom and of property to a slave could not, under the laws of this State, take effect so long as the devisee remained within the State, yet it was not void, either under the common law or the statutory law of the State; and if the property was devised to a trustee for the benefit of the emancipated slave, the trust survived until the latter could escape or should be taken without the limits of the State.

3. H., a citizen of this State, by his last will and testament, made and probated in 1856, bequeathed to his slave Betsy her freedom, and also devised to a trustee, for her use, a large amount of real and personal property. Betsy remained in the State, and in 1859 she and her trustee, for a valuable consideration paid to the former, executed to C., the defendant, a conveyance of certain Galveston city lots, part of the property devised in trust. In 1866, Betsy instituted this suit for a cancellation of the conveyance to C., and to be quieted in her title and possession of the lots. *Held*, that the trustee is a necessary party to this suit, but may be discharged if it shall appear that the trusts are executed.

And, *held further*, that when the conveyance to C. was made, in 1859, the plaintiff was a slave, and incapacitated to make a valid deed; and as the trustee was not empowered to sell the property, it follows that the conveyance to C. was void, and, that the plaintiff is entitled to a reconveyance, upon refunding to C. any purchase money she may have received from him.

4. The case of Webster v. Heard, 32 Texas, 685, is overruled.

APPEAL from Galveston.     Tried below before the Hon. George R. Scott.

The bequests of David Webster, out of which this litigation grew, will be found in the report of the case of Webster v. Heard, 32 Texas, 685, where are also stated the facts in connection with the probate of the will.     The property in controversy in this suit was seven lots in block 255 in Galveston.     The conveyance of Betsy Webster and her trustee, Mrs. Hardin, to Corbett, was dated the fourth of March, 1859, and recited a consideration of $2800, paid to Betsy Webster.

The character and allegation of the petition were very similar to those in the case against Heard, just referred to, and it is not necessary to repeat them here.

The defendant denied all the allegations of fraud and relied upon his deed.     Representing that the plaintiff had entered upon and taken possession of the lots in the fall of 1865, he reconvened for damages, alleging the rents to have been worth six hundred dollars per annum.     The jury returned a general verdict in his favor, and also awarded him $2533, damages; and judgment in accordance with the verdict was rendered by the court below.     A new trial being refused, the plaintiff appealed.

*Stancel & Stancel*, for the appellant.

*P. C. Tucker*, for the appellee, discussed the facts, and relied upon the case of Webster v. Heard, 32 Texas, 685.

WALKER, J.—In Purvis v. Sherrod, 12 Texas, 140, a court,

sitting in a slave State, surrounded by all the influences of the institution, both civil and social, uttered the following *noble language*: "A bequest of slaves, upon trust that they should be carried to a free State, or to the colony of Liberia, where they may enjoy their freedom, *is not void* at common law because of the incapacity of the beneficiaries to take, at the testator's decease."

"Where a right exists at common law, and the Constitution contains a provision that the Legislature shall have power to permit the exercise of the right, under certain regulations and restrictions, the common law right is not affected until the Legislature acts; it is otherwise when the right did not exist at common law." It is unnecessary to say that at common law *no man was a slave.* A person who desired to emancipate his slaves, as the law stood on the eighth day of May, 1856, must have provided for sending the slaves out of the territorial limits of the State; but it was not necessary that it should be done in a day, a month, or year. The slave could not go without the limits by his own free will; he would have been detained by law, and whilst he remained he could not take either his freedom or any devise or legacy of real or personal property; but an estate devised in trust for his use would vest in the trustee, and there remain *sub modo;* and if, by any means, the slave could get to a free State or Government, then his right as *cestui que trust* attached, and the law fixed no limit within which the use must attach and be enjoyed. Betsy Webster might have lived and died in the State of Texas, a slave and poor, notwithstanding the handsome fortune left her by a grateful and humane master, and yet Mrs. E. J. Hardin would have held the property as trustee. The condition that Betsy should leave the State was by no means an impossible condition; it was not in contravention of the common law, nor of the statute law, if her trustee had done her duty and taken her out of the State to a free State, as she might have done.

The fact that Mrs. Hardin did not formally assume the trust,

but tried, probably in good faith but in ignorance of the law, to transfer the trust to her son, does not change the law of this case. The legal title to the property was in her, and is yet in her, and she must be made a party (if living) to this action. A court of probate, by its equity power, could discharge her and appoint another trustee, or it might, perhaps, declare the trust executed, now that Betsy Webster has been made a free woman. The district court may perhaps do this by virtue of its equity jurisdiction; but Mrs. Hardin must be made a party, before the proper decree can be entered in the case. When the deed to Corbett was made, Betsy Webster was a slave and could not make a deed. Nor does it help the matter that Mrs. Hardin should have joined in the deed. She could not sell and convey the land of her *cestui que trust*, without an order from a court of competent jurisdiction. The judgment of the district court is reversed, and the cause remanded, to be proceeded in in accordance with this opinion. Let Mrs. E. J. Hardin be made a party, and the trust properly represented, and if it shall appear to the court that the trust has been executed, she may be discharged and the lots 1, 2, 3, 4, 5, 6 and 7, in block 255, in the city of Galveston, may be decreed to Betsy Webster, the plaintiff.

But there is evidence going to show that Betsy Webster did receive the purchase money for this property, from Corbett; and if a jury shall so find, equity requires that she refund the money before she can be entitled to a reconveyance of the property.

The case of Webster v. Heard, decided by this court at the Galveston term, 1870, has been considered and is overruled.

Reversed and remanded.