EX PARTE WILLIAM SUMNER.

No. 21993. Delivered January 28, 1942.

The opinion states the case.

*W. Gail Walley, Jr.,* of Jacksboro, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

DAVIDSON, Judge.

This is an appeal from an order of the County Judge of Jack County, Texas, refusing to discharge appellant upon his application for the writ of habeas corpus and remanding him to the custody of the arresting officer.

Appellant is now, and at all times hereinafter mentioned, a Sergeant in Company "D," 55th Training Battalion of the United States Army, stationed at Camp Wolters, Texas, and is subject to the orders of the Army.

On the 3rd day of August, 1941, he was charged, in the County Court of Jacks County, Texas, with the offense of negligent homicide, a misdemeanor. The details of such charge do not appear in the record before us. By virtue of a warrant of arrest, issued under such accusation, the Sheriff of Jack County, Texas, on the 6th day of August, 1941, arrested appellant and took him into custody. The arrest was made at Camp Wolters, in Palo Pinto County, Texas, under the circumstances detailed by the sheriff, as follows:

"I served the warrant of arrest on William Sumner when he was brought back here. He was in the Army post at Camp Wolters when I took custody of him. Yes, they brought him out at the point of guns to deliver him into my custody when I went to arrest him."

It is appellant's contention that exclusive jurisdiction to try him for the offense charged lies in the military courts, and that the civil courts are without power or authority to proceed against him. He cites In re Wulzen, 235 Fed. 362, as supporting his contention.

At the time of the commission of the alleged offense (August 3, 1941), a state of war did not exist in this country, but there did exist an unlimited national emergency, requiring that the military, naval, air, and civil defenses be put on the basis of readiness to repel any and all acts or threats of aggression directed against any part of the western hemisphere, as shown by the Proclamation of the President of the United States of America, of date May 27, 1941.

The Articles of War are contained in Title 10, U. S. C. A., Sections 1471 to 1593, both inclusive. Section 1565 thereof reads as follows:

"Any person subject to military law who commits manslaughter, mayhem, arson, burglary, housebreaking, robbery, larceny, embezzlement, perjury, forgery, sodomy, assault with intent to commit any felony, assault with intent to do bodily harm with a dangerous weapon, instrument, or other thing, or assault with intent to do bodily harm, shall be punished as a court-martial may direct."

Under this Section, the offense charged against appellant was within the jurisdiction of the military courts. There is

nothing in said Section suggesting that the jurisdiction there conferred upon the military courts is exclusive. To the contrary, the Articles of War make mandatory provision for the delivery of military subjects to the civil authorities for trial for offenses within the jurisdiction of the civil courts, because Section 1546 thereof reads as follows:

"When any person subject to military law, except one who is held by the military authorities to answer, or who is awaiting trial or result of trial, or who is undergoing sentence for a crime or offense punishable under these articles, is accused of a crime or offense committed within the geographical limits of the States of the Union and the District of Columbia, and punishable by the laws of the land, the commanding officer is required, except in time of war, upon application duly made, to use his utmost endeavor to deliver over such accused person to the civil authorities, or to aid the officers of justice in apprehending and securing him, in order that he may be brought to trial. Any commanding officer who upon such application refuses or willfully neglects, except in time of war, to deliver over such accused person to the civil authorities or to aid the officers of justice in apprehending and securing him shall be dismissed from the service or suffer such other punishment as a court-martial may direct.

"When, under the provisions of this article, delivery is made to the civil authorities of an offender undergoing sentence of a court-martial, such delivery, if followed by conviction, shall be held to interrupt the execution of the sentence of the court-martial, and the offender shall be returned to military custody, after having answered to the civil authorities for his offense, for the completion of the said court-martial sentence."

Under this Section, two exceptions exist to the application thereof; these are: (a) when the military subject is being held to answer for trial or is undergoing a sentence for an offense under the Articles of War; (b) when a state of war exists. The effect of these exceptions, then, is to say that, when a state of war exists, or when the subject is being held for trial, or is serving a sentence, for an offense punishable under the Articles of War, the commanding officer is not required to deliver him to the civil authorities. The reason therefor is obvious, for the civil authorities ought not—especially in time of war—to be empowered to interfere with the military authorities in the exercise of control and jurisdiction over

their military subjects. But, whether the delivery of a particular military subject into the custody of civil authorities for trial would or would not interfere with or hamper the military establishment is a matter primarily within the knowledge of the officers in charge thereof. Such being true, there is nothing to prevent the military authorities from waiving the exceptions mentioned. That such exceptions were waived in the instant case is shown by the fact that the appellant was by the military authorities delivered into the custody of the sheriff for trial. There is nothing to show that the military authorities have asserted any right to proceed against appellant for the offense charged against him, nor that such authorities are investigating, or have made any investigation, relative thereto.

It is thus made to appear that, in the instant case, two authorities have concurrent jurisdiction of the offense charged: one, the civil authorities are seeking to enforce their jurisdiction; the other, the military authorities not only do not seek to enforce their jurisdiction, but acquiesce in the jurisdiction of the civil authorities.

It does not lie with the accused to select the tribunal by which he is to be tried.

The conclusion is reached that the appellant was, at the time of the institution of this proceeding, legally in the custody of the civil authorities.

The views expressed herein are in keeping with and supported by the authorities of Funk v. State, 208 S. W. 509, 84 Tex. Cr. R. 402; Caldwell v. Parker, 64 L. Ed. 621; United States v. Hirsch, 254 Fed. 109; People v. Denman (Calif.), 177 Pac. 461; Coleman v. Tennessee, 24 L. Ed. 1118; Grafton v. United States, 51 L. Ed. 1084.

The Wulzen case, supra, relied upon by appellant, is deemed neither in point nor controlling here. It was written in 1916, before the passage, in 1920, of Section 1546, supra. The provisions of said Section are controlling here. The holding in the Wulzen case being at variance therewith, of necessity yields thereto.

We take judicial knowledge of the fact that a state of war does now exist, and has existed since December 8, 1941, in this country. Such was not the status at the time the appellant was

surrendered by the military authorities to the custody of the sheriff.

From what has been said, it follows that the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.