John Robert PHELPS, Appellant

v.

The STATE of Texas, Appellee

No. 06–16–00116–CR

Court of Appeals of Texas,
Texarkana.

Date Submitted: October 26, 2016

Date Decided: April 10, 2017

Discretionary Review Refused
August 23, 2017

James P. Finstrom, Attorney at Law, P O Box 276, Jefferson, TX 75657, for Appellant.

Ricky Shelton, Assistant Country Attorney, 102 West Austin, Room 201, Jefferson, TX 75657, for Appellee.

Before Morriss, C.J., Moseley and Burgess, JJ.

## OPINION

Opinion by Justice Burgess

After a jury heard evidence that John Robert Phelps engaged in sexual intercourse with his nineteen-year-old biological daughter, they convicted him of prohibited sexual conduct.[1] In accordance with the jury's verdict, the trial court sentenced Phelps to twenty years' imprisonment, ordered him to pay a $10,000.00 fine, and also ordered him to pay $400.00 for his court-appointed counsel.

---

1. Section 25.02(a)(1) of the Penal Code states that a "person commits an offense if the person engages in sexual intercourse or deviate sexual intercourse with another person the actor knows to be, without regard to legitimacy ... the actor's ancestor or descendant by blood or adoption." TEX. PENAL CODE ANN. § 25.02(a)(1) (West 2011).

On appeal, Phelps argues that the evidence is legally insufficient to support the jury's verdict of guilt because his daughter's testimony was not sufficiently corroborated. He also argues that the trial court erred in failing to charge the jury that his daughter was an accomplice to the offense as a matter of law.

Because we conclude under the facts of this case and the applicable law that Phelps' daughter was a victim, rather than a willing participant in the incestuous relationship, we conclude that she was not an accomplice to the offense. Accordingly, we overrule both of Phelps' points of error. However, we modify the trial court's judgment to delete the imposition of attorney's fees for court-appointed counsel because the record demonstrates that Phelps was indigent and that the trial court made no determination that he was able to pay those fees. As modified, we affirm the trial court's judgment.

## I. Factual Background

Phelps' daughter, Ashley, testified that when she was six years old, Phelps made her sit on his lap while he showed her photographs of children performing sexual acts for their parents. From that point, Ashley's childhood was overshadowed by mental, physical, and sexual abuse, which she believed was normal because she "never knew any different [sic]." Ashley testified that Phelps began penetrating her sexual organ at a young age. When she started her menstrual cycle at the age of nine, Phelps would test her urine to ensure that she was not pregnant. Phelps continuously warned her that "it would be bad" if she spoke to anyone about the sexual

abuse and that her mother and others would "judge [her] and be mad at [her]." Ashley testified that she kept her silence because she was afraid of the consequences.

Ashley further testified that she could not count how many times she had been sexually abused by her father. She informed the jury that she was unable to physically defend herself against Phelps who was six feet four inches tall and weighed over 200 pounds. Ashley said, "I would try and push him away, but most of the time it didn't work, and I just got to where I gave up trying to put up a fight because it wouldn't have helped."

Ashley then described the 2012 occurrence that gave rise to the State's indictment. She testified that during an argument with Phelps, she "said something ... smart alec, and he hit me open-handedly across the face."[2] After the incident, Ashley felt "upset and just aggravated, and [she] just wanted to go to sleep to be done with the day." She changed into her pajamas and went to sleep in her room, but was awakened by Phelps, who "began to touch [her] private area, and ... began penetrating [her]." In her written statement to police, she added that she "tried pushing him away, but he continued." According to Ashley, Phelps stopped the sexual assault and quickly threw a blanket over her after her mother walked past the door to her bedroom. When Ashley's mother, Tammy Phelps, asked Phelps what he was doing, he responded that he was in Ashley's room because he felt bad for hitting her.

Tammy testified that she left Phelps a few days later because she was also scared of him.[3] In 2014, Ashley also moved out of

---

**2.** Ashley said it was "very common" for Phelps to hit her.

**3.** Tammy's friend, Cathryn Snellgrove, testified that Tammy confided in her and that she

helped Tammy formulate a plan to leave Phelps abruptly because they believed that Tammy's life was in danger.

the home. Caren Crumbie testified that she invited Ashley to live with her after discovering that she was homeless. They became friends, and Ashley told Crumbie about the abuse. Crumbie described Ashley's account as "heart-breaking." Ashley told Crumbie that she was concerned about her sister, who was ten years younger than Ashley and was still living with Phelps. Crumbie testified that the two discussed reporting Phelps' sexual abuse to the police in the hope of preventing possible abuse of Ashley's sister.

After the discussion, Ashley contacted Alisha Riehl, a corporal with the Marion County Sheriff's Office, about "[t]he physical and sexual abuse and the mental abuse that [she] endured." Riehl testified that Ashley revealed instances of "sexual abuse as a child" during her interview.

Phelps did not assert that Ashley was a willing participant, but instead denied that the events alleged by Ashley occurred. By the time of trial, Tammy had reconciled with Phelps. She testified that she never saw any inappropriate sexual activity between Ashley and Phelps. According to Tammy, Ashley said that nothing ever happened between her and Phelps.

Rebecca Konrad, who lived with Phelps and Ashley from July 2012 until the end of 2013, also testified that she never witnessed any sexual abuse between them. However, Konrad witnessed verbal, mental, and physical abuse. She testified that Phelps "shoved [Ashley] into a wall and spit in her face and slapped her as well." According to Konrad, the instances of physical abuse were "too many to count." When Konrad was seventeen, she became engaged to Phelps after Tammy left him, but called off the relationship after Phelps began physically abusing her.

After hearing the evidence, the jury found Phelps guilty.

## II. Phelps' Daughter Was Not An Accomplice

In his first point of error, Phelps argues that Ashley was an accomplice as a matter of law[4] and that the evidence is legally insufficient to support the jury's finding of guilt because her testimony was not sufficiently corroborated. "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely

4. The trial court instructed the jury that

[a] conviction cannot be had upon the testimony of an accomplice unless the jury first believes that the accomplice's evidence is true and that it shows the defendant is guilty of the offense charged against him, and even then you cannot convict unless the accomplice's testimony is corroborated by other evidence tending to connect the defendant with the offense charged, and the corroboration is not sufficient if it merely shows the commission of the offense, but it must also tend to connect the defendant with its commission.

By finding Phelps guilty, it can be presumed the jury found either that Ashley was not an accomplice and, therefore, no corroboration was required, or that she was an accomplice and her testimony was sufficiently corroborated by other evidence. However, on appeal, Phelps argues that the evidence is insufficient to sustain the conviction because it fails to corroborate the testimony of Ashley, who is an accomplice as a matter of law. The State replies that "the evidence is sufficient to support the verdict as no corroborating evidence was required because Ashley Phelps was not an accomplice since the sexual act was the result of force, threat, fraud or undue influence." As briefed, the State does not argue that it sufficiently corroborated Ashley's testimony, only that she was not an accomplice and therefore no corroboration was required. Accordingly, we only consider the question of whether Ashley was an accomplice as a matter of law and not whether sufficient corroborating evidence was presented if she was an accomplice.

shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). An accomplice is one who was or could have been charged with the same or a lesser-included offense. *Zamora v. State*, 411 S.W.3d 504, 510 (Tex. Crim. App. 2013).

Phelps cites to *Bolin v. State*, in which the Texas Court of Criminal Appeals wrote:

> It is the established rule that a female who consents to or voluntarily enters into an incestuous intercourse is an accomplice witness. Conversely, if the act is the result of force, threats, fraud, or undue influence, she is not an accomplice witness. If such female is found to be an accomplice witness, then there must be other evidence tending to connect the accused with the offense. If such corroboration is lacking, the evidence will be held insufficient to support the conviction.

*Bolin v. State*, 505 S.W.2d 912, 913 (Tex. Crim. App. 1974) (citations omitted).

In *Bolin*, the defendant's thirteen year-old daughter asked her father if he would purchase hamburgers for her and her siblings. *Id.* at 912–13. The defendant answered, "Yeah, but you know what you have to do to get 'em." *Id.* at 913. After the children ate the hamburgers that the defendant purchased, the defendant called his child daughter into his bedroom. *Id.* He asked his daughter to remove her clothes, and she complied. *Id.* He then engaged in incestuous sexual intercourse with his daughter. *Id.* At trial, the child testified that her father had been sexually abusing her since she was ten years old and that she had told him "on more than one occasion that sex hurt her and she did not want

to do it." *Id.* After citing the rule mentioned above, the Court of Criminal Appeals concluded that the child was not the victim of force, threats, or fraud because "the evidence showing that she made neither outcry nor resistance, although others were nearby" established that she was an accomplice. *Id.* The court also concluded that the child was not the victim of undue influence because "[a] woman whose consent to an act of intercourse is obtained by the payment or promise of money would ordinarily be held an accomplice." *Id.* Accordingly, the Texas Court of Criminal Appeals held that the child was an accomplice as a matter of law. *Id.* at 914.

In declining to apply *Bolin* in the past, we have previously noted that a person under the age of seventeen is legally incapable of giving consent to intercourse. *Duby v. State*, 735 S.W.2d 555, 557 (Tex. App.–Texarkana 1987, pet. ref'd). However, *Duby* involved a complaining witness who was a minor, whereas, the complainant in the present case was nineteen years old at the time of the act resulting in the present prosecution. Moreover, the cases citing the rule followed in *Bolin* have held that evidence such as that presented in this record does not rise to the level of "outcry nor resistance" sufficient to allow conviction without corroboration of the complaining witnesses' testimony. Nevertheless, as is shown below, the rule in *Bolin* is no longer applicable because the incest statute in effect when the rule was adopted was amended in 1973, thereby superseding the *Bolin* case.

 The rule in *Bolin* was adopted in 1885 in the case of *Mercer v. State*, where the court of appeals [5] held,

---

**5.** The Court of Criminal Appeals was created in 1891 by Constitutional Amendment. *See* S.J.R. 16, 22nd Leg., R.S. 1891, approved August 28, 1891. Before that, Article V, section 1 of the Texas Constitution read, "The judicial power of this State shall be vested in one Supreme Court, in a Court of Appeals, in District Courts, in County Courts, in Commis-

It was entirely upon the testimony of the defendant's daughter, with whom the incestuous intercourse is alleged to have occurred, that this conviction was obtained. ... If the witness, knowingly, voluntarily, and with the same intent which actuated the defendant, united with him in the commission of the crime charged against him, she was an accomplice, and her uncorroborated testimony cannot support the conviction. But if, in the commission of the incestuous act, she was the victim of force, threats, fraud or undue influence, so that she did not act voluntarily, and did not join in the commission of the act with the same intent which actuated the defendant, then she would not be an accomplice, and a conviction would stand even upon her uncorroborated testimony.

*Mercer v. State*, 17 Tex.App. 452, 465 (1885) (citation omitted). To understand the basis for this rule, and why the rule is no longer applicable to the current incest statute, we must compare the current and former Texas incest statutes.[6]

---

sioners' Courts, in Courts of the Justices of the Peace, and in such inferior courts as may be created by law." TEX. CONST. amend. V, § 1 (amended Aug. 28, 1891).

6. The dissent's assertion that we must follow the *Bolin* opinion in this case notwithstanding the 1973 amendments to the incest statute highlights an important issue regarding stare decisis. As one commentator has explained the doctrine,

> [W]hen a court enunciates a rule of law to be applied in[] the case at bar, it not only establishes a precedent for subsequent cases under the doctrine of stare decisis, but it establishes the law, which other courts owing obedience to it *must*, and which in itself will normally apply in subsequent proceedings in that case.

*James Wm. Moore & Robert Stephen Oglebay*, THE SUPREME COURT, STARE DECISIS AND LAW OF THE CASE, 21 TEX. L. REV. 514, 540 (1943) (footnote omitted). Yet, the binding effect of cases under the stare decisis doctrine varies depending on two factors: (1) whether the original case involved an interpretation of common law, the constitution, or a statute and (2) whether the original case was written by the court considering the prior case or by another court of equal jurisdiction (horizontal stare decisis) or was written by a higher court (vertical stare decisis). *See Brian C. Kalt*, THREE LEVELS OF STARE DECISIS: DISTINGUISHING COMMON-LAW, CONSTITUTIONAL, AND STATUTORY CASES, 8 TEX. REV. L. & POL. 277, 278 (2004); *see also Andrew T. Solomon*, A SIMPLE PRESCRIPTION FOR TEXAS' SAILING COURT SYSTEM: STRONGER STARE DECISIS, 37 ST. MARY'S L.J. 417, 425–32 (2006).

Under horizontal stare decisis, courts possess the greatest amount of discretion to revisit their own cases or cases issued by courts of equal jurisdiction which involve constitutional or common-law questions. However, " 'in the area of statutory construction, the doctrine of *stare decisis* has its greatest force' because the Legislature can rectify a court's mistake, and if the Legislature does not do so, there is little reason for the court to reconsider whether its decision was correct." *Sw. Bell Tel. Co., L.P. v. Mitchell*, 276 S.W.3d 443, 447–48 (Tex. 2008) (quoting *Marmon v. Mustang Aviation, Inc.*, 430 S.W.2d 182, 186 (Tex. 1968)). Therefore, under horizontal stare decisis courts have less discretion to revisit their own cases or cases issued by courts of equal jurisdiction which involve statutory interpretations. Under vertical stare decisis, lower courts have practically no discretion to revisit a case issued by a higher court regardless of whether it involves a constitutional, common-law, or statutory question. Consequently, it would seem that a lower court could never consider the validity of an opinion issued by a higher court on a statutory question.

Nevertheless, when the Legislature amends a statute after it has been interpreted by a court, a different factor comes into play. Traditionally, "super stare decisis" is justified in one of two ways: (1) if the Legislature disagrees with the court's ruling, it can amend the statute, so that its failure to amend is considered as acquiescence to the court's ruling; or (2) because the courts cannot avoid statutory interpretation "the first time a statutory ambiguity is presented to it" it must interpret the statute, but once the court has ruled, its "refusal to revisit a statutory interpretation is a means of shifting policymaking responsibility back to Congress, where it belongs." *Amy Coney Barrett*, STATUTORY STARE DECISIS IN THE COURTS OF APPEALS, 73 GEO. WASH.

The incest statute in effect when *Mercer* was decided was Article 329 (later renumbered as Article 495) of the Texas Penal Code of 1879. It said, "All persons who are forbidden to marry by the succeeding articles, who shall intermarry or carnally know each other, shall be punished by imprisonment in the penitentiary not less than two nor more than ten years." Act of Feb. 21, 1879, 16th Leg., R.S., SB 20 (1879 Penal Code not printed in General and Special Laws of Texas), https://www.sll.texas.gov/assets/pdf/historical-statutes/1879/1879-4-penal-code-of-the-state-oftexas.pdf. The statute remained virtually unchanged until 1973, when the current Penal Code was adopted, creating Section 25.02. Act of May 24, 1973, 63d Leg., R.S., ch. 399, § 25.02, 1973 Tex. Gen. Laws 883, 921–22 (amended 1993, 2005, 2009) (cur-

rent version at TEX. PENAL CODE § 25.02 (West 2011)). The 1973 version of the statute stated, "An individual commits an offense if he engages in sexual intercourse ... with a person he knows to be, without regard to legitimacy[, related within the prohibited degree of kinship]." Act of May 24, 1973, 63d Leg., R.S., ch. 399, § 25.02, 1973 Tex. Gen. Laws 883, 921–22 (amended 1993, 2005, 2009). The current version of Section 25.02 contains essentially the same language as the 1973 version.[7]

■■■ "When the legislature amends a statute, we presume the legislature meant to change the law, and we give effect to the intended change." *Brown v. State*, 915 S.W.2d 533, 536 (Tex. App.–Dallas 1995), *aff'd* 943 S.W.2d 35 (Tex. Crim. App. 1997) (citing *Cook v. State*, 824 S.W.2d 634, 643 (Tex. App.–Dallas 1991, pet. ref'd)); *see*

L. REV. 317, 317–18 (2005). Yet, where the Legislature substantively amends a statute after a decision has been issued interpreting the statute, the courts can no longer engage in the assumption that the Legislature acquiesced in the prior case holding. Moreover, by amending the statute, the Legislature exercised its policymaking responsibility in response to the prior case. Thus, when faced with post-decision statutory amendment, the justifications for "super stare decisis" not only fail, they actually compel a court's re-evaluation of the statute out of deference to the Legislature's supremacy on statutory issues.

Clearly, under horizontal stare decisis a court has the authority to revisit its own prior decision (or the prior decision of a court of equal jurisdiction) in view of a subsequent statutory amendment. *See Ex parte Sumner*, 143 Tex.Crim. 238, 158 S.W.2d 310, 312 (1942) ("The *Wulzen* case, supra, relied upon by appellant ... was written in 1916, before the passage, in 1920, of Section 1546, supra. The provisions of said section are controlling here. The holding in the *Wulzen* case being at variance therewith, of necessity yields thereto."). Yet, even a lower court has the authority to consider the continued applicability of a prior decision by a higher court when a statutory amendment supersedes the prior decision. *See Sarmiento v. State*, 93 S.W.3d 566,

568 (Tex. App.–Houston [14th Dist.] 2002, pet. ref'd) (citing *Gonzales v. State*, 697 S.W.2d 35, 38 (Tex. App.–Houston [14th Dist.] 1985, pet. ref'd) (holding that because the Legislature's post-decision amendments to Article 42.12 of the Texas Code of Criminal Procedure overruled the Court of Criminal Appeals' interpretation of the former version of that statute, it was no longer bound by the higher court's pre-amendment opinion)); *Coy v. State*, 831 S.W.2d 552, 556 n.4 (Tex. App.–Austin 1992, no pet.) (per curiam) ("The 1989 amendment of art. 37.07, § 3(a), effectively overrules *Murphy v. State*, 777 S.W.2d 44 (Tex. Crim. App. 1988.")); *Petco Animal Supplies, Inc. v. Schuster*, 144 S.W.3d 554, 565 (Tex. App.–Austin 2004, no pet.) ("As an intermediate appellate court, we are not free to mold Texas law as we see fit but must instead follow the precedents of the Texas Supreme Court unless and until the high court overrules them *or the Texas Legislature supersedes them by statute.*") (Emphasis added).

As is explained below, the Legislature amended the Texas incest statute after the *Bolin* case was tried. The amendment effectively superseded the statute upon which *Bolin* was based. Accordingly, we do not violate stare decisis by distinguishing the *Bolin* decision based on the current statute.

7. *See supra* note 1.

also *Lafayette v. State*, 835 S.W.2d 131, 134 (Tex. App.–Texarkana 1992, no pet.) ("In construing a statute, we must presume that all of the language employed by the Legislature has a meaning and purpose."). "We also presume the legislature was aware of all caselaw affecting or relating to the statute." *Brown*, 915 S.W.2d at 536 (citing *Grunsfeld v. State*, 843 S.W.2d 521, 523 (Tex. Crim. App. 1992), *superseded by statute on other grounds as recognized by Lopez v. State*, 253 S.W.3d 680, 686 n.28 (Tex. Crim. App. 2008)). Moreover, "[w]e presume that the legislature used every word for a purpose *and* excluded every word excluded for a purpose." *Id.* (citing *Cook*, 824 S.W.2d at 643).

██ Obviously, a defendant cannot commit the offense of incest without the participation of another person, but the other person's participation can be willing or unwilling. If the other person willingly participates in the act of sexual intercourse, the relationship between the parties is one of perpetrator and accomplice (or co-perpetrators).[8] On the other hand, if the other person unwillingly participates, the relationship between the parties is one of perpetrator and victim.[9] This distinction is significant to the application of the accomplice-witness rule in incest cases.

██ Ordinarily, "[i]t is incumbent upon the accused to develop such facts as would show that the [accomplice witness] rule applies." *Lundy v. State*, 164 Tex.Crim. 111, 296 S.W.2d 775, 776 (1956). Yet, the rule announced in *Mercer* and restated in

---

8. *See Bohannon v. State*, 84 Tex.Crim. 8, 204 S.W. 1165, 1168 (1918) (Prendergast, J., dissenting) ("[I]f the act is voluntary and with the same intent committed by the father and daughter, the daughter is a principal precisely the same as the father.").

9. In *Mercer*, the Court of Appeals held, Notwithstanding the evidence in this case may show that the defendant committed

*Bolin* effectively reversed this burden in incest cases, requiring the State to corroborate the complainant's testimony *unless* it presented evidence establishing that the accomplice witness rule *did not* apply. Thus, in *Sanders v. State*, the Court of Criminal Appeals held,

It seems to be the well-settled rule in this state that ordinarily the prosecutrix in an incest case is an accomplice and that her testimony needs to be corroborated as to the main fact sought to be established, unless her testimony brings her within an exception to the general rule when such means as force, threats, etc., are used to overcome resistance.

*Sanders v. State*, 132 Tex.Crim. 25, 102 S.W.2d 208 (1937). Likewise, in *Mercer*, the Court of Appeals defined the issue as follows:

By far, the most embarrassing question to us, which is presented in this case for our determination, is the sufficiency of the evidence to sustain the conviction. If the prosecuting witness was not an accomplice, then the evidence is unquestionably sufficient. If, on the other hand, she *was* an accomplice, her testimony, if not corroborated to the extent required by law, is insufficient. The first inquiry, therefore, is, does the evidence warrant the conclusion that she was *not* an accomplice?

*Mercer*, 17 Tex.App. at 465. In *Alexander v. State*, the Court of Criminal Appeals held that "[i]ncest is an offense against

rape upon his daughter, he may be prosecuted and convicted for incest; and that, to make him guilty of incest, it was not necessary that his daughter should have consented to his carnal knowledge of her. She might be entirely innocent of any crime, and yet he might be guilty of rape or incest, or both, by having carnal knowledge of her. *Mercer*, 17 Tex.App. at 464.

society in which both parties ordinarily engage with the same intent and purpose; hence both parties to the offense are principals and equally guilty." *Alexander v. State*, 126 Tex.Crim. 625, 72 S.W.2d 1080, 1082 (1934).

This burden shift was consistent with the former version of Section 25.02 in effect when *Mercer* was decided.[10] Because the former statute declared *"all persons* [within the prohibited degree of relationship] ... who shall intermarry or carnally know *each other"* to be guilty of incest, the former statute effectively presumed that the parties were perpetrator and accomplice (or co-perpetrators).[11] Consequently, in ·order to prove that the act of sexual intercourse occurred, the complainant's testimony had to be corroborated unless there was affirmative evidence establishing

the complaining witness was not an accomplice.

▇▇▇▇▇ However, the current version of Section 25.02 applies to *"a person ...* [who] engages in sexual intercourse ... *with another person ...."* TEX. PENAL CODE ANN. § 25.02 (West 2011) (emphasis added). Thus, the amended statute eliminated the presumption under the prior statute that both parties were perpetrator and accomplice (or co-perpetrators). Now, under Section 25.02, as in any other criminal prosecution, the defendant must point to sufficient evidence in the record establishing that the complaining witness was an accomplice in order to invoke· the accomplice witness rule. There is no longer a statutory presumption that the complaining witness was an accomplice unless the State proves that she was not.[12] This

---

**10.** *Bolin* was decided in 1974. The opinion does not state whether the defendant in *Bolin* was prosecuted under the 1973 Penal Code or the previous version, but the opinion does state that "[t]he indictment alleged that appellant committed incest with the prosecutrix on or about the 18th day of February, 1973." *Bolin*, 505 S.W.2d at 912. Moreover, the 1973 Penal Code took effect on January 1, 1974, *Hicks v. State*, 587 S.W.2d 422, 423 (Tex. Crim. App. [Panel Op.] 1979), and a defendant may not be prosecuted for "violation of a penal statute not in effect on the date alleged in the indictment." *Ieppert v. State*, 908 S.W.2d 217, 219 (Tex. Crim. App. 1995). Accordingly, it is clear that the defendant in *Bolin* was prosecuted under the former version of the incest statute.

**11.** In *Mercer*, the Court of Appeals rejected the defendant's argument that "in using the words 'carnally know each other,' " the incest statute "presupposes the *consent* of both parties" and therefore, "a *rape* of the woman by the man excludes the crime of *incest*, and ... where incest is, *rape* cannot be." *Mercer*, 17 Tex.App. at 463. Nevertheless, the Court of Appeals went on to hold that the State had to prove that the complaining witness was not an accomplice. *Id.* at 465. Accordingly, the Court of Appeals did not hold that the statute did not presume the complaining witness was

an accomplice, only that the statute did not make the offenses of sexual assault and incest mutually exclusive.

**12.** Of course, the State can still prosecute both parties under Section 25.02 if there is evidence that both parties willingly engaged in the conduct with one another. *Cf. McCrory v. State*, 854 S.W.2d 262 (Tex. App.–Eastland 1993, pet. ref'd) ("If appellant's daughter was a willing participant, she would be an accomplice."). In that instance, both would be *"a person ...* [who] engages in sexual intercourse ... *with another person ...."* TEX. PENAL CODE ANN. § 25.02 (emphasis added). Likewise, in that instance, both parties would be perpetrators (or perpetrator and accomplice), and the accomplice witness rule would apply.

But where the State only charges one party and offers testimony from the complaining witness to prove the defendant's guilt, the complaining witness's testimony need not be corroborated unless there is affirmative evidence establishing that she willfully engaged in the prohibited sexual conduct. Just as in any other criminal prosecution, the defendant would have to "develop such facts as would show that the [accomplice witness] rule applies." *Lundy*, 296 S.W.2d at 776. And, under the current statute, merely showing that the

amended language not only returned the burden of establishing the basis for application of the accomplice witness rule to the accused in incest cases, it also reflects the seismic shift in the law regarding sexual assault cases between 1885 and the 1970s.[13] This is particularly so when the

incestuous act is between a parent and child, beginning in childhood and continuing into adulthood.[14]

 Consequently, the rule announced in *Mercer* and restated in *Bolin* was superseded by the 1973 amendments to the incest statute.[15] Under Section 25.02

complaining witness did not physically resist the defendant's actions is not sufficient to establish that she willingly participated in the conduct.

13. Contrary to the dissent's characterization of our observations of the seismic shift in the legal and societal bases for the *Bolin* rule as personal opinions outside the record, the history of changes in sexual assault law has been carefully documented in law reviews and secondary sources. *Cf. James A. Vaught & Margaret Henning*, Admissibility of a Rape Victim's Prior Sexual Conduct in Texas: a Contemporary Review and Analysis, 23 St. Mary's L.J. 893, 894–95 (1992) (discussing the "rape reform movement" beginning in the 1960's and 1970's which resulted in the enactment of Rule 412 of the Texas Rules of Evidence). Moreover, such history is relevant to our consideration of the effects of the 1973 amendments to the Texas Incest Statute because they tend to show that those amendments were not merely procedural, but were substantive amendments intended to bring the Texas law of incest into conformity with the modern law concerning sexual assault cases. *See* Tex. Gov't Code Ann. § 311.023 (West 2013) ("In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the ... (2) circumstances under which the statute was enacted .... ").

14. Compare *Mannie v. State*, where the concurring justice argued that a line of Court of Criminal Appeals cases dating back to 1911, which recognized a "sort of 'res gestae' exception for cases involving sexual offenses" making "extraneous transactions between a defendant and the complainant ... admissible," was based on an assumption about child sexual assault cases that is no longer consistent with modern viewpoints:

Society considered sexual abuse so rare and despicable that it was inherently unbelievable, requiring considerable corroboration. The child was deprived of the deference ordinarily accorded to witnesses by the fact

finder because she was testifying to something absolutely unbelievable. Since [the previous] era, public awareness of child sexual abuse has increased considerably. *See* D. FINKELHOR, CHILD SEXUAL ABUSE 1 (1984). Today, a child alleging child sexual abuse is not automatically disbelieved. In fact, many people believe such stories absolutely, considering the child incapable of fantasizing such occurrences.

*Mannie v. State*, 738 S.W.2d 751, 758–59 (Tex. App.–Dallas 1987, pet. ref'd) (Thomas, J., concurring) (discussing *Boutwell v. State*, 719 S.W.2d 164, 173 (Tex. Crim. App. 1985) (op. on reh'g), *abrogated by Vernon v. State*, 841 S.W.2d 407, 410 (Tex. Crim. App. 1992)). Justice Thomas further noted,

The rationale [behind the rule discussed in *Boutwell*] seems based upon the assumption that the child is somehow at fault for allowing the rape unless there is proof that she was seduced by the accused. Society's perception of the victim of sexual assault has changed considerably since 1911. It is no longer a prevalent belief that the victim "asked for" the assault to happen, or that the victim is in any way culpable for allowing the assault to occur. By accepting the rationale of [the previous case law] that it is necessary to show that the child's resistance was overcome by seduction or allurements, the *Boutwell* court is preserving the antiquated perceptions of the victim as being at fault.

*Id.* at 759–60. Shortly after *Mannie*, the Court of Criminal Appeals held that the rule in *Boutwell* was no longer valid, noting that even in *Boutwell*, the rule had "received only a small plurality of the votes" and that it had already questioned the rule's validity in cases since *Boutwell*. *Vernon*, 841 S.W.2d at 410.

15. In *Brown v. State*, the Court of Criminal Appeals cited to *Bolin* after the 1973 amendments without discussing its continued applicability in light of the amended statute. *Brown v. State*, 657 S.W.2d 117, 118 (Tex. Crim. App.

as it exists today, evidence merely estab- lishing that the complainant was an adult

[Panel Op.] 1983). In *Brown*, the defendant "specifically challenge[d] the sufficiency of the corroboration of the complainant's testimony." *Id.* The Court of Criminal Appeals observed that the complaining witness "began hitting appellant and trying to get up. Appellant then told [her] that he would kill her husband if she did not comply." *Id.* On the basis of this evidence, the Court of Criminal Appeals held, "Viewing the evidence in the light most favorable to the State, the evidence shows that L___ M___ was compelled to participate in incestuous intercourse with appellant through the use of force, threats and undue influence. Thus, L___ M___ is not an accomplice ...." *Id.*

Under previous cases interpreting the standard adopted in *Mercer* and followed in *Bolin*, it is doubtful that evidence of threats alone would have been sufficient to overcome the *Bolin* presumption that the victim in *Brown* was an accomplice. *See Trejo v. State*, 135 Tex.Crim. 39, 117 S.W.2d 115, 115 (Tex. Crim. App. 1938) (Court of Criminal Appeals held "[w]e are unable to reach the conclusion that the witness was not an accomplice" despite testimony by complaining witness that her father "had sexual intercourse with her about five times 'in the cotton-picking time'" during the year 1937, that "[m]y father drew a knife on me and forced me to do that with him," that "I was afraid of him," and that "[appellant] told her he would kill her if she reported the matter to her folks"); *Sanders v. State*, 132 Tex.Crim. 25, 102 S.W.2d 208, 208 (1937) (complaining witness was an accomplice as a matter of law despite her testimony "that she permitted [her father to have sexual intercourse with her] because he threatened to whip her with a belt; that she did not say anything about it to any one for a long time; [and] that at the time of the alleged incestuous act she was a few months past the age of fifteen years"); *Tate v. State*, 77 S.W. 793, 795–97 (Tex. Crim. App. 1903) (Henderson, J., dissenting) (holding that complaining witness's "passive submi[ssion]" to her father's "act of carnal intercourse" with her "without her consent" and that she failed to outcry or resist because "she was frightened" were insufficient to show she was not an accomplice); *Marchbanks v. State*, 125 Tex.Crim. 436, 68 S.W.2d 1038, 1039 (1934) (holding that complaining witness was an accomplice

as a matter of law despite her testimony that "I didn't consent to it ... when I had intercourse with my father, I tried to get away but I couldn't do it. I tried to get loose from him. ... I tried to get up and hit him but that didn't do no good. He was so much stouter than I was" was insufficient to establish that she was not an accomplice). Accordingly, by ruling that the defendant's threat to kill the victim's husband was sufficient evidence for a jury to find that the victim was not an accomplice, it could be argued that *Brown* lowered the standard of proof necessary to prove the complaining witness was not an accomplice without expressly saying so.

It seems indisputable that the pre–1940 cases cited above are inconsistent with modern societal and legal views regarding lack of consent in incest cases to the point of being offensive to modern sensibilities. Thus, it is tempting to rule that the 1973 amendments did not supersede *Bolin*, but that the *Bolin* standard was modified by *Brown* so that the evidence in this case is sufficient to meet that new, post-*Brown* standard. Two problems exist with this proposed solution. First, the Court of Criminal Appeals reached the same conclusion in *Brown* that it had reached back in 1934. *See Alexander v. State*, 126 Tex.Crim. 625, 72 S.W.2d 1080, 1084 (1934) (op. on reh'g) (complaining witness's testimony that "No, sir, I did not submit to that intercourse with him of my own free will" and that "[h]e told me if I didn't do it, he would blow my damn brains out" created a fact question of whether the complaining witness was an accomplice or not). Thus, it is not clear that *Brown* changed anything. The second problem is that even if *Brown* can be interpreted as changing the *Bolin* standard so that evidence of threats is sufficient, no evidence of threats exists in this record. As an intermediary court of appeals, we could not lower the *Bolin* standard any further than it was arguably lowered in *Brown*. *See supra*.

Nevertheless, we need not anguish over such matters. The Legislature remedied this problem when it amended the incest statute in 1973. Because there was sufficient evidence in *Brown* upon which the jury could have found that the complaining witness was not an accomplice under *Bolin*, the Court of Criminal Appeals did not need to address the continued applicability of the *Bolin* decision in light of the 1973 amendments to the incest

and failed to complain or resist is not sufficient to establish that an incest victim was an accomplice. *Cf. Smith v. State*, 332 S.W.3d 425, 439–40 (Tex. Crim. App. 2011) (holding "[a] person is not an accomplice if the person knew about the offense and failed to disclose it or helped the accused conceal it"). Rather, there must be affirmative proof establishing the complaining witness willingly participated in the act of sexual intercourse upon which the prosecution is based. *See Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007) ("To be considered an accomplice witness, the witness's participation with the defendant must have involved some affirmative act that promotes the commission of the offense with which the defendant is charged.").[16]

▉ . Phelps fails to direct us to any affirmative proof establishing that Ashley was an accomplice as a matter of law. In the absence of such evidence, Ashley was a victim, not an accomplice, and no corroboration of her testimony was necessary. Thus, we overrule Phelps' first point of error. Our ruling is also dispositive of Phelps' second issue, which argues that the trial court erred in failing to submit an instruction which instructed the jury that Ashley was an accomplice as a matter of law. "A trial judge ... has no duty to instruct the jury that a witness is an accomplice witness as a matter of law unless there exists no doubt that the witness is an accomplice." *Druery*, 225 S.W.3d at 498. Because we find that Ashley was not an accomplice, the trial court did not err in denying Phelps' requested jury instruction.[17]

---

statute. Therefore, nothing in *Brown* is inconsistent with our holding here.

**16.** We respectfully disagree with the dissent's conclusion that the evidence in this case affirmatively establishes that Ashley willingly participated in the act of intercourse for which Phelps was charged. The dissent points to Ashley's testimony that she refused to engage in oral sex or "French kissing" with her father and that he did not force her to. The dissent also concludes that because Ashley testified that "most of the time [resistance] didn't work," it necessarily sometimes did, and therefore, her own testimony establishes that she willingly participated in the act of sexual intercourse. The problem with that analysis is that it equates an incest victim's resignation to a continuing cycle of sexual assault from age six through adulthood with willing participation. Under that reasoning, a defendant could convert the complaining witness into an accomplice simply by continuing the abuse long enough that she gives up attempting to resist.

In interpreting a statutory amendment, we are not to give an interpretation that would lead to an absurd result. *Ex parte Ervin*, 187 S.W.3d 386, 388 (Tex. Crim. App. 2005) ("We interpret a statute according to the literal meaning of the words in the statute, unless doing so would lead to an absurd result that the legislature could not have intended.").

Accordingly, we hold that in order to prove Ashley was an accomplice under the amended statute, Phelps cannot establish Ashley willingly participated in the sexual intercourse merely by showing that she did not forcibly resist his actions when she was nineteen after suffering thirteen years of a continuing cycle of abuse. Rather, he must point to affirmative evidence that she willingly participated in the sexual intercourse constituting the act of incest for which the defendant is charged.

**17.** The dissent appears to misunderstand our opinion when it states, "Incest is not a singular act; there must be at least two participants." That point is obvious, and we state as much when we say, "Obviously, a defendant cannot commit the offense of incest without the participation of another person ...." We do not hold, as the dissent suggests, that the 1973 amendment somehow negated the requirement that two parties be involved for the offense of incest to occur. Rather, we hold that the amendments eliminated the presumption under the prior statute that the complaining witness was an accomplice witness unless the State proved she was not. Now, as in any criminal offense, the defendant must point to affirmative evidence establishing that the complaining witness willingly participated in the act of sexual intercourse upon which the offense is based.

## III. Modification of the Judgment

 Under Article 26.05(g) of the Texas Code of Criminal Procedure, a trial court has the authority to order the reimbursement of court-appointed attorney's fees only if "the judge determines that a defendant has financial resources that enable the defendant to offset in part or in whole the costs of the legal services provided ..., including any expenses and costs." TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (West Supp. 2016). "[T]he defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees" of legal services provided. *Armstrong v. State*, 340 S.W.3d 759, 765–66 (Tex. Crim. App. 2011) (quoting *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010)). Since there was no finding that Phelps was able to pay them, the assessment of attorney's fees was erroneous. *See Cates v. State*, 402 S.W.3d 250, 252 (Tex. Crim. App. 2013); *see also Mayer v. State*, 309 S.W.3d 552 (Tex. Crim. App. 2010); *Martin v. State*, 405 S.W.3d 944, 946–47 (Tex. App.–Texarkana 2013, no pet.).

 This Court has the power to correct and modify the judgment of the trial court sua sponte for accuracy when the necessary data and information are part of the record. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.–Dallas 1991, pet. ref'd) ("The authority of an appellate court to reform incorrect judgments is not dependent upon the request of any party, nor does it turn on the question of whether a party has or has not objected in the trial court."). Therefore, we modify the trial court's judgment by deleting the assessment of attorney's fees.

## IV. Conclusion

We modify the trial court's judgment by deleting the assessment of attorney's fees and affirm the trial court's judgment, as modified.

Concurring Opinion by Chief Justice Morriss

Dissenting Opinion by Justice Moseley

Josh R. Morriss III Chief Justice

### CONCURRING OPINION

I respectfully concur in this Court's opinion that modifies, and affirms as modified, the judgment of the trial court in this case.

I agree with the Court's opinion that the incest statute's amendment redefining the offense from plural actors to a singular actor, as is ably explained in our majority opinion, removes the binding effect of the *Bolin* rule on us. *See Bolin v. State*, 505 S.W.2d 912, 913 (Tex. Crim. App. 1974) (offense dating from before statutory amendment). Admittedly, however, there is room to also conclude that the statutory change does not necessarily require the death of the *Bolin* rule. I believe there is another, independent, reason requiring that we affirm Phelps' conviction.

Here, the trial court submitted to the jury the fact question of whether Ashley was a victim or an accomplice. "Where there is a conflict in the evidence, a doubt or question, as to whether a witness is an accomplice witness, it is proper to submit the same as a fact issue to the jury even though the evidence seems to preponderate in favor of the fact that the witness is an accomplice witness as a matter of law." *Harris v. State*, 738 S.W.2d 207, 216 (Tex. Crim. App. 1986) (en banc). Accordingly, "A trial judge ... has no duty to instruct the jury that a witness is an accomplice witness as a matter of law unless there

exists no doubt that the witness is an accomplice." *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007).

From the evidence in this record, the jury was within its role in concluding that, from a young age, Ashley was often physically and sexually abused by Phelps. The jury could also have concluded that, due to Phelps' warnings and threats, Ashley was afraid of the consequences of making any outcry or of putting up much resistance. There was evidence that, just before the incident giving rise to the State's indictment, Ashley was slapped by Phelps and was angry with him. Ashley testified that Phelps entered her room while she was sleeping and had intercourse with her. In her written statement to police, Ashley wrote that she "tried pushing him away, but he continued." Because there is evidence that Ashley was not a willing participant in the incest, she was not an accomplice as a matter of law. *See McCrory*, 854 S.W.2d at 264.

Additionally, the testimony of Ashley, Caren Crumbie, and Alisha Riehl, recited in our main opinion, tends to support the finding that Ashley was a victim, not an accomplice. "Viewing the evidence in the light most favorable to the State" leads to the conclusion that Ashley "was compelled to participate in incestuous intercourse with [Phelps] through the use of force [or] threat." *Brown v. State*, 657 S.W.2d 117, 118 (Tex. Crim. App. [Panel Op.] 1983). Accordingly, because the jury, on sufficient evidence, found Ashley to be a victim, I conclude that her testimony was not required to be corroborated.

With the above explanation, I join in the Court's disposition of this case.

Bailey C. Moseley Justice

## DISSENTING OPINION

With the sentiments which exist today, it would be much easier for me to accept the conclusion of the majority in this case and concur in the judgment of guilt handed down to John Robert Phelps regarding the allegation that he had engaged in incestuous acts with his daughter, Ashley. However, our predecessors on the bench said in much earlier years that "[i]t is of the utmost importance that rules of law once established should not be departed from, and it is the business of the courts, not to make laws, but to declare what the law is, whether it be wise or unwise." *Webster v. Heard*, 32 Tex. 685, 690 (Tex. 1870), *overruled in part by Webster v. Corbett*, 34 Tex. 263 (1870). Other earlier courts in Texas have declared that "[i]n the discharge of our duty, the rules of evidence must be observed in all cases. This is for the common benefit of all, in order that all may alike be protected by the rules of law." *Jones v. State*, 38 Tex. Crim. 87, 105 (1897).

The issue which is controlling here is whether Ashley was an accomplice to the charged offense and, as such, (1) whether her testimony needed to be corroborated and (2) whether an instruction to that effect needed to be provided to the jury. Plainly, if she was an accomplice, her testimony needed to be corroborated.

The majority correctly states that if a joint actor does not willingly participate in a crime, that person is no longer an accomplice. However, the majority then states that Ashley was not a willing participant in the sex act which constituted the incest. That is where I differ with the majority.

While it is true that the evidence apparently established that the incestuous relationship between Phelps and Ashley had been ongoing for a number of years before the time of the incident giving rise to the charges, Ashley was well into her majority (nineteen years of age) when the incident occurred. Not only was Ashley no longer a

child, she had moved out of her father's house and was no longer under his financial control for many months before the incident precipitating the criminal charges faced by Phelps.

The concurrence relies partially on *McCrory v. State*, 854 S.W.2d 262, 264 (Tex. App.–Eastland 1993, pet. ref'd) which, in turn, cites *Duby v. State*, 735 S.W.2d 555 (Tex. App.–Texarkana 1987, pet. ref'd), for the proposition that where there is an incestuous relationship between a father and a daughter, the power of the daughter to refuse sexual advances has been so diminished that the daughter was not an accomplice to the sex act.

However, neither *McCrory* nor *Duby* is applicable here because (unlike nineteen-year-old Ashley) the daughters in both of those cases were minors when the acts occurred. Neither of the girls was of an age to consent to the sexual activity. Besides, what is known as the juvenile exception to the accomplice witness rule was abandoned by the Texas Court of Criminal Appeals in 1998 in *Blake v. State*, 971 S.W.2d 451, 458–59 (Tex. Crim. App. 1998), and affirmed by applying it retroactively two years later. *Taylor v. State*, 10 S.W.3d 673, 676 (Tex. Crim. App. 2000). Surely, if the accomplice witness rule now applies to mere children, there is no good reason for it not to apply to adults.

The majority also relies on *Brown v. State*, 657 S.W.2d 117 (Tex. Crim. App [Panel Op.] 1983), to affirm its conclusion that Ashley did not willingly participate in the sex act with her father, the accused here. The *Brown* case is totally different from the one at bar. In *Brown*, the daughter had sex with her father because the father threatened to slay the husband of the victim if she refused his sexual advances. In other words, the daughter was a victim because her consent to sex was elicited only through threats of violence toward a person she loved.

What hold did Ashley testify that her father had over her should she reject his physical advances? Although there was quite a bit of evidence of the brutality that Phelps visited on his daughters (such as slapping them on the face, whipping them with a belt, and throwing their belongings outside into the cold), there was no evidence of that brutality when Ashley said Phelps was trying to get her to engage in sex acts with him on the night in question. When attempting to explain why she allowed Phelps to have intercourse with her, Ashley said, "[Phelps] would tell me that, oh, you don't love me or you don't care about me and kind of like make me feel bad about it if I would try to push him away." She went on to add that she was afraid, that she did not report him to the authorities because her father had convinced her that the police were bad people and that he made her afraid of everybody. She testified that as a result of this, "[she] was just scared to tell anybody because [she] was scared of the consequences of what might happen." Although Ashley may have been trying to prevent her father from making her feel badly for rejecting his advances or having him say that she did not care about him, that hardly sounds like sufficient threat to remove Ashley's will to refuse to have sex. Certainly, a refusal by Ashley to engage in sex with her father was no more exigent than her decision to move out of the residence occupied by him.

It appears from the record that Ashley was not totally unable to place any limits on Phelps' sexual conduct toward her. She testified,

> [H]e would try to have me perform oral sex for him. And he would also try to have me like kiss him and things, like French kissing him and stuff. And I just

got very uncomfortable with that, so he quit trying to get me to kiss him and things. And I didn't want to perform oral sex for him.

It is obvious, then, that Ashley was able to resist some of the sexual acts that she testified that Phelps wanted her to perform. If she was able through her reticence to get Phelps to cease trying to get her to perform oral sex or even to French kiss him, why would she suddenly be unable to resist his advances on the night in question? In another part of her testimony, Ashley was asked if she ever interposed any resistance to her father's sexual advances. Ashley responded, "I would try and push him away, but *most of the time it didn't work,* and I just got to where I gave up trying to put up a fight because it wouldn't have helped." (Emphasis added). It is important to note that Ashley testified that her refusal did not have any impact on Phelps "most of the time," but no one pursued the issue of the times that her refusal to participate did cause him to cease.

In particular, Ashley alleged in her statement to the police that on the night that she alleged that she and Phelps engaged in sex together, she indicated that she had fallen asleep, only to awaken and find Phelps taking her underwear off and stroking her vagina in a sexual manner. According to her statement, she "tried pushing him away, but he continued. He made me turn sideways toward him, then he began to enter my vagina." The State asked Ashley, "So it was not a struggle for him to turn you sideways then?" Ashley responded, "No." It is apparent that Ashley did not resist. Ashley further described the events of that night by relating,

He began to touch my private area, and about that—he began penetrating me, and about that time he began, my mother had come out of their bedroom. And my door is here, and the door was open, and their bedroom was kind of cater-corner to where my room was. So she had come out of the room, and he had quickly threw the blanket. Pushed, kind of pushed me back onto the bed and threw the blanket back over me really quick. And she asked him why are you in Ashley's room? What are you doing? And he just told her that I just felt really bad for hitting her and stuff and that I was just sitting in here. And she didn't really question it.

It is a cogent point that Ashley did not then cry out to her mother that her father was forcing her to have sex with him. Did she withhold any such outcry because (as she later described her motives for silence) she was afraid that she would feel badly about denying sex to him or that he might say that she did not care about him?

Strictly on the question as to whether she was an accomplice, if the complaining party had been Ashley's mother, could she not have filed a complaint of incest against both Ashley and Phelps?

The majority attempts to justify its departure from established law by pointing out certain language changes in Section 25.02 of the Texas Penal Code (the statute under which Phelps was charged with incest). While it is true that the law under which Bolin was tried and the law under which Phelps has been charged are not the same, there is nothing to show that the Legislature changed the previous law in an effort to eliminate the precedent set by *Bolin.*[18] Great stock in both the majority

---

18. We note that the change in the law to which the majority refers was occasioned by the adoption of the Texas Penal Code. Al- though the wording of the revised statute is substantially different from the one it amended (primarily because it makes no reference

opinion and in the concurrence is placed upon the fact that the original statute giving rise to the opinion in *Bolin* makes reference to multiple participants whereas the newer version speaks in the singular. This makes no difference in defining the crime, and the performance of the act prohibited by the statute must necessarily involve more than one person. It did when the original statute was drafted and it still does; no one can violate this law by masturbating. If one looks at the 2005 changes to the statute, it is plain to see that one of the objects of the change was for the purpose of removing the idea that only a male can violate this law and that a woman can commit incest as well. There is nothing in that statutory amendment to suggest an intention by the Legislature to except a daughter from the imposition of the law or to obviate the requirement that the testimony of an accomplice must be corroborated. The statute regarding accomplice witness testimony is clear, no matter what crime is alleged, and it does not contemplate a singular actor. "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). The majority would have us to modify that long-standing requirement by adding wording to the statute that would limit its application only to cases not involving incest if there is a long-standing history of childhood sexual abuse. Although one might argue that changing the law in that respect might be a worthy goal, changing the law is a task for the Legislature, not

to another statute within itself), it neither expands nor restricts the definition of the crime. Are we to assume, then, that no case-law that existed before the adoption of the

for this Court; to do so amounts to judicial activism which I believe is prohibited.

Let us assume, arguendo, that the majority is correct and examine what would be a closely-related fact situation in which this new rule espoused by the majority could easily apply. In this scenario, one assumes that there is a case involving a different nineteen-year-old complainant. Between the time she was ten and the time she was thirteen, her father had sexually molested her but then the child moved away from him. After a period of some six years of separation (at which time the girl would have attained majority), the victim of the sexual molestation and her father are reunited and they resume sexual relations. Is that girl a victim or an accomplice in an incest case against the father? What if the parent and child have been living separately only one year? How about six months? How about if there was only one act of sexual misconduct on the part of the father when the child was twelve years old? What if there were three instances of sexual misconduct spread out over a ten-year period? At what point and under what circumstances does the child lose her ability to resist? How tall is a tree?

Pertaining to the argument that the party having the burden of proof regarding the issue of whether Ashley was an accomplice in the act of incest, Phelps needed to provide no evidence. The State provided ample evidence of the participation of Ashley in the sex act. The sole question would be whether she was a willing participant (i.e., an accomplice) or whether she was compelled (i.e., a victim).

The evidence in this case reveals Phelps to be a despicable person. Just because he is a despicable person is no reason to

Penal Code is to be followed, simply because new laws were passed involving the same subject?

abrogate the long standing rule that the testimony of an accomplice must be corroborated. I am reminded that once a middle-aged student in a government class indicated to me that she believed that people who were accused of child sexual molestation should not have any rights at all. It would not surprise me if that were not a majority opinion within the community. Just because there may have been a seismic shift in the attitude of society regarding the position of child sex offenders (just as this woman's comment would suggest) does not mean that we should deprive any accused of the rights afforded to others. The majority cites, among other things, the "seismic shift" in public opinion regarding sexual offenders. In doing so, it relies on sources outside of the record in an attempt to legitimize what would be a departure from the law.[19] The courts should stand as a bulwark against that kind of attitude.

The majority attempts to show that Ashley was not Phelps' accomplice because (1) the jury found that there was no accomplice relationship and (2) Phelps denied that any sex act had taken place at all.

The problem in relying on the jury's ruling is that the jury rules on the facts and not the law. Incest is not a singular act; there must be at least two participants. The jury could certainly rule on whether the sex act took place between Phelps and his daughter, but here it is ultimately a question of law to determine whether Ashley was an accomplice.

As to the position of the majority that Phelps' denial that sexual activity occurred between him and Ashley constitutes evidence that Ashley was not an accomplice is simply nonsensical. As an example, let us assume that the crime with which Phelps was charged was robbery and not incest. Would he be required to admit that he was a participant in the robbery before he could invoke the accomplice witness rule? No, of course not.

The laws exist to protect us all. In doing so, they protect the despicable and the wonderful without looking to see which kind of person they protect. It is far beyond the province of this Court to unilaterally bestow the title of victim on an accessory because we believe the accused to be a truly bad person.

I believe the evidence shows nineteen-year-old Ashley to have been a willing accessory to the crime of which Phelps has been charged. The very evidence presented by the State shows this to be true and no further evidence needed to be introduced to demonstrate Ashley's active participation in incest with her father.

The trial court erred when it failed to direct the jury to disregard Ashley's uncorroborated testimony, an instruction specifically requested by Phelps. Because the degree of harm needed for reversal depends on whether the appellant preserved the error by objecting to the charge, *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g), in some circumstances, we might be forced to examine the impact that the error had on the outcome. Had the jury been properly instructed to not consider the evidence supplied by Ashley, there would have been no evidence of the crime at all. Since the entire case of the State is based on the

---

19. One should remember that law review articles are often advocates for change, not evidence of the law as it exists. Further, the very law review article to which footnote 12 of the majority opinion refers cites a change in Rule 412 of the Rules of Evidence as reflective of the "rape reform movement." If the change in the law under which Phelps was convicted was likewise prompted by the same movement, it would have been quite easy for the writer of that law review article to cite it as well. There is no such citation.

uncorroborated allegations of Ashley, an accomplice, there was insufficient evidence to convict Phelps of the crime with which he was charged.

Phelps' conviction should be reversed.